MALLONEE et al. v. FAHEY et al.
FEDERAL HOME LOAN BANK OF LOS ANGELES

v.

FEDERAL HOME LOAN BANK OF PORTLAND.
Civ. Nos. 5421, 5678.

United States District Court,
S. D. California, C. D.
Nov. 30, 1953.

See also 200 F.2d 918.

---

Sylvester Hoffmann, Los Angeles, Cal., Philip H. Angell, San Francisco, Cal., Verne Dusenbery, Portland, Ore., for Federal Home Loan Bank of San Francisco, et al.

F. Henry NeCasek, Long Beach, Cal., for Roy E. Hegg and George Turner.

O'Melveny & Myers, Los Angeles, Cal., Richard Fitzpatrick, Los Angeles, Cal., for Federal Home Loan Bank of Los Angeles and Coast Federal Savings & Loan Ass'n, et al.

W. I. Gilbert, Jr., Los Angeles, Cal., for Receiver Ernest Utley and for First Federal Savings & Loan Ass'n of Wilmington.

James E. Burns, San Francisco, Cal., Charles Dal Sooy, San Francisco, Cal., Alden Ames, San Francisco, Cal., for Pioneer Investors Savings & Loan Ass'n, et al.

Linnell & Smith, Long Beach, Cal., for Harold Lee Newendorp and Charles E. Bradley.

Robert A. Moffitt, Los Angeles, Cal., for Land Title Ins. Co.

Thomas P. Menzies and Harold L. Watt, Los Angeles, Cal., for Home Indemnity Co.

Lyman B. Sutter, Long Beach, Cal., for Title Service Co.

Raymond Tremaine, Los Angeles, Cal., for Robert H. Wallis.

Charles K. Chapman, Long Beach, Cal., for Long Beach Federal Savings & Loan Ass'n.

Westover & Smith, Los Angeles, Cal., for Mallonee, et al.

Frank G. Makepeace, Long Beach, Cal., for intervenor, Lillian A. Coggswell.

Crail & Crail, Los Angeles, Cal., for Joe Crail.

Roger W. Powers and Paul L. Zimmerman, Los Angeles, Cal., for Charles Taylor.

Shafer & Seymour, Compton, Cal., for Fred G. Hunter and Melba N. Hunter.

Austin, Austin & Jones, Compton, Cal., for Wayne H. Sones and Helen M. Sones.

Kelsey Petterson, Los Angeles, Cal., for M. E. Spice.

Bates S. Himes, Beverly Hills, Cal., for C. C. Connor, dba Surety Finance & Adjustment Co.

Emmett E. Doherty, Los Angeles, Cal., for plaintiff in intervention, John D. Willhoit.

Ronald Walker, Los Angeles, Cal., Special Master.

HALL, District Judge.

Without attempting to narrate the whole, or even a small portion, of the history of this proliferating litigation, it is necessary, none-the-less, to state some of it for a better understanding of the problems involved in the multitude of motions (29) which were argued for eight days in consolidated actions 5421 and 5678 and related action 13979 of this court.

On May 20, 1946 the Federal Home Loan Bank Administration, by an order No. 5254, designated A. V. Ammann as Conservator of the Long Beach Federal Savings and Loan Association, who, on the same date summarily took possession thereof and of all its assets and properties, for text of Order 5254 see 14 F.R.D. 273, footnote 6.

On May 27, 1946 action No. 5421 was commenced by the filing of a complaint by Mallonee and others as a shareholders committee (California State Corporation Commissioner license No. 80282–La) of the Long Beach Federal Savings & Loan Association, against various defendant officials and others alleging the invalidity of order No. 5254 appointing the conservator and seeking his ouster and the return of the Association to its shareholders. The complaint, among other things, attacked the constitutionality of those provisions of the Federal Home Owners' Loan Act, mainly section 5(d) thereof, 12 U.S.C.A. § 1464(d), relating to the appointment of conservators. A temporary restraining order was issued; a three-judge court was convened under then 28 U.S.C. § 380a (now 28 U.S.C. § 2282 et seq.); a hearing was had before the three-judge court on July 15 and 16, 1946 and on September 5, 1946 the three-judge court made its decision, D.C., 68 F.Supp. 418, holding the above mentioned section of the Act unconstitutional and ousting the conservator, requiring accounting, enjoining proposed administrative hearing, and signed a judgment to that effect on September 30, 1946. The next day, October 1, 1946, Justice Rutledge of the Supreme Court stayed the enforcement of the three-judge court order. Appeal was taken to the Supreme Court on October 3, 1946 from the judgment of the three-judge court; on April 7, 1947 on application, and after hearing, the District Court made an order allowing $50,-000 on account of attorneys' fees and approximately $17,000 on account of costs, to the shareholders' committee upon which a petition for writ of prohibition, etc. was promptly taken to the Supreme Court for hearing at the same time as the main appeal from the decision of the three-judge court. The matters were argued April 30, 1947 (the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., was signed June 11, 1946), and on June 23, 1947 the Supreme Court made its decision, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030, re-

versing the judgment of the three-judge court but did not direct the dismissal of action No. 5421, and on the same day denied a motion for a writ of prohibition and likewise did not direct the dismissal of the action, 332 U.S. 258, 67 S.Ct. 1552; the mandate from the Supreme Court was received and spread in the District Court on August 19, 1947.

In the meanwhile, on August 22, 1946, action No. 5678 was commenced by the filing of a complaint by the Federal Home Loan Bank, of Los Angeles and six of its stockholders Associations as a class for all members, seeking restoration of said Los Angeles Bank to its status, location and officials prior to March 29, 1946, and recovery of its assets and attacking the validity of various orders of the Federal Home Loan Bank Administration, all of which were made on March 29, 1946, which summarily provided for the dissolution of the Los Angeles Bank, discharge of its officers and directors, and the transfer of its assets and properties to the Portland Bank, the name of which was changed to the Federal Home Loan Bank of San Francisco, and headquarters therefor removed both from Portland and Los Angeles to San Francisco (for text of orders see 14 F.R.D. 273–283, footnote 5). Under the "low-number rule" of this court, case No. 5678 was transferred to me and thereafter, in due course, on November 7, 1947, an order of consolidation of the two cases for all purposes was made. In the meanwhile (August 26, 1946), the Los Angeles Bank, not joining with any of its members, had filed a cross-claim in action 5421 seeking substantially the same relief it sought in action 5678.

Thereafter, numerous orders were made by the District Court, particularly in connection with interpleaders, by persons owing notes to the Long Beach Association secured by trust deeds, which interpleaders brought approximately a million and a half dollars into Court. Numerous orders were made thereon as well as numerous other orders, among them certain orders allowing attorneys' fees and costs. From several of such orders appeals were taken by the official defendants attacking the jurisdiction of the District Court but all of said appeals were dismissed. Appeals were taken from subsequent orders allowing attorneys' fees, Master's fees, and the like, some of which are still pending.

On December 1, 1949, an order (14 F.R.D. 273) was made after hearing in the Consolidated case enjoining and restraining an administrative hearing before the Home Loan Bank Board on its order No. 2015 dated September 9, 1949, (for text of order see 14 F.R.D. 273–289, footnote 11), which hearing was set for Washington, D. C. and concerned the administration of the affairs of the Long Beach Federal Building and Loan Association. Neither the order of the Home Loan Bank Board No. 2015, nor the injunction of December 1, 1949, were concerned directly with the subject matter of the Los Angeles Bank action No. 5678.

On December 29, 1949 the Home Loan Bank Board, Federal Savings and Loan Insurance Corporation and the defendants who were officials of the United States, gave notice of appeal from said order for injunction, and on January 5, 1950 the Federal Home Loan Bank of San Francisco gave similar notice. Thereafter, on April 2, 1952, the United States Court of Appeals handed down its opinion in the injunction appeal Home Loan Bank Board v. Mallonee, 9 Cir., 196 F.2d 336, at page 391 the concluding paragraph of which reads as follows:

"Upon consideration of the whole record we conclude that the order of the lower court dated December 1, 1949, which restrains and enjoins the holding of an administrative hearing called pursuant to the provisions of Order No. 2015 of the Home Loan Bank Board, dated September 9, 1949, was erroneously issued. It is therefore ordered that the said *order for Preliminary In-*

*junction be, and the same is, hereby reversed, and the court below is directed to vacate and set aside the said injunction."* (Italics supplied.)

Subsequently petitions for certiorari were filed and ultimately denied.

On June 19, 1950, after due notice and hearing, this court made its order for allowance of attorneys' fees limited to counsel for plaintiffs in the Los Angeles Bank action No. 5678. On June 20, 1950, the Home Loan Bank Board, Federal Savings & Loan Insurance Corporation, and the various individual defendants who were officials of the United States, filed notice of appeal from that order as did the Federal Home Loan Bank of San Francisco.

On November 6, 1952 the United States Court of Appeals for the Ninth Circuit filed its opinion in the attorneys' fee appeal, Fahey v. O'Melveny & Myers, 200 F.2d 420, at page 481, in the Los Angeles Bank case, No. 5678, the concluding paragraph of which reads as follows:

"For reasons set forth in this opinion the order of the lower court here on appeal which awards attorneys' fees to appellees is reversed. The validity of the claim for such fees is sustainable only on the theory that the lower court had *jurisdiction in personam over indispensable parties* to the Los Angeles Action and jurisdiction of the subject matter of that action. We have previously held that the court did not have *such jurisdiction* and we therefore remand the case before us with directions to the lower court to dismiss the Los Angeles Action." (Italics supplied.)

Applications for certiorari were likewise made and ultimately denied in that matter.

The appeal from the order of injunction, of December 1, 1949, in action 5421, carried No. 12511 in the appellate court, and the appeal from the order for allowance of attorneys' fees carried No. 12591 in the appellate court. No order of consolidation was made of the appeals in the appellate court.

On May 25, 1953 a Special Assistant to the Attorney General, traveling from Washington, D. C. for that purpose, and without the customary notice to all counsel, presented to the court for spreading, the mandate of the Court of Appeals which appears to be a consolidated mandate, although no order was ever made on appeal consolidating the two appeals. The mandate reads as follows:

"United States of America, SS: The President of the United States of America to the Honorable, the Judges of the United States District Court for the Southern District of California, Central Division, Greeting:

"Whereas, lately in the United States District Court for the Southern District of California, Central Division, before you or some of you, in consolidated causes between Mallonee, Bucklin and Fergus, et al, plaintiffs, third party plaintiffs and cross-claimants, and John H. Fahey, et al, defendants, Civil No. 5421–P. H.; and between Federal Home Loan Bank of Los Angeles, et al, plaintiffs, and Federal Home Loan Bank of San Francisco, et al, defendants, Civil No. 5678–P.H.; wherein an Order of Preliminary Injunction was duly filed, and entered on the 2nd day of December, 1949, and wherein an Order re allowance of attorneys' fees on account was duly filed and entered on the 19th day of June, 1950; which said orders are of record and fully set out in said causes in the office of the Clerk of the said District Court, to which record reference is hereby made and the same is hereby expressly made a part hereof.

"And Whereas, the said John H. Fahey, et al, and said Federal Home Loan Bank of San Francisco have appealed to this Court as by the inspection of the transcript of the

record of the said District Court, which was brought into the United States Court of Appeals for the Ninth Circuit by virtue of an appeal agreeable to the Act of Congress, in such cases made and provided, fully and at large appears.

"And Whereas, on the 1st day of May, in the year of our Lord, one thousand nine hundred and fifty one, the said consolidated causes came on to be heard before the said United States Court of Appeals for the Ninth Circuit, on the said transcript of record, and was duly submitted.

"And Whereas, on the 6th day of May, in the year of our Lord, one thousand nine hundred and fifty-two, the said consolidated causes came on to be heard before the said United States Court of Appeals for the Ninth Circuit, on the said transcript of record, and was duly submitted.

"And Whereas, said actions were consolidated in the District Court for all purposes, and a review of decisions in both said appeals was sought by appellees upon consolidated petitions for writs of certiorari to the United States Supreme Court, which said petitions were denied on the 4th day of May, 1953:

"On Consideration Whereof, It is now here ordered and adjudged by this Court that the said orders of the said District Court in these consolidated causes be and hereby are reversed and that said consolidated causes be and hereby are remanded to the said District Court with directions to:

"1. Dismiss Civil Action No. 5678–P.H. at the cost of plaintiffs.

"2. Dismiss the following pleadings in Civil Action 5421–P.H.:

"(a) The complaint of Mallonee, Bucklin and Fergus, and all amendments and supplements thereto, at the cost of said complainants;

"(b) The cross-claim and third party complaint of Long Beach Federal Savings and Loan Association, and all amendments and supplements thereto, at the cost of third party complainant and cross-claimant;

"(c) The cross-claim of Federal Home Loan Bank of Los Angeles; and all amendments and supplements thereto at the cost of said cross-claimant;

"(d) The cross-claim in interpleader of Title Service Company, and all amendments and supplements thereto, at the cost of said cross-claimant;

"(e) The cross-claim in interpleader, and all amendments and supplements thereto, of Robert H. Wallis, at the cost of said cross-claimant;

"3. Dissolve, set aside and vacate the order of said District Court entered the 13th day of March, 1948, insofar as the same requires Federal Home Loan Bank of San Francisco to deposit in the Registry of said District Court promissory notes in the aggregate principal amount of $6,300,000.00, collateral securing the same and any other documents or property deposited by San Francisco Bank pursuant to said order; and return to Federal Home Loan Bank of San Francisco without charge or impairment said promissory notes, together with Government bonds in the face amount of $5,300,000.00 with all interest coupons attached thereto at the time of deposit and together with cash from the sum in the Registry of said Court sufficient to make the combined total sum of $6,324,098.35, with interest on $6,300,000.00 at 2% per annum from the 10th day of March, 1948 until the date of such release.

"4. Set aside and vacate said order of preliminary injunction en-

tered the 2nd day of December, 1949.

"You, Therefore, are Hereby Commanded that such proceedings be had in said consolidated causes, in conformity with the opinions and judgments of this Court, as according to right and justice, and the laws of the United States, ought to be had, the said appeals notwithstanding.

"Witness, the Honorable Fred H. Vinson, Chief Justice of the United States, the 21st day of May in the year of our Lord one thousand nine hundred and fifty three.

Paul P. O'Brien
Clerk, United States Court of Appeals for the Ninth Circuit."

At the time the mandate was offered for spreading there was still pending undecided a petition for rehearing before the Supreme Court.

While the appeals were taken from only the order of injunction of December 1, 1949, in 5421, and only from the order for allowance of attorneys' fees in the Los Angeles Bank case, 5678, the mandate, as appears on its face, is unusual in that it goes a great deal further than a mere disposition or reversal of the two orders from which appeals were taken. The opinion of the Court of Appeals in the injunction case, No. 12511, occupies 56 printed pages in the report and in 12591 the attorneys' fee matter, 62 pages. The record on appeal in 12511 consumed approximately 12,000 printed pages and the files and records in the case in this court, to date, in 5421 and 5678 are colossal, occupying several filing cabinets of 4 drawers each. Innumerable hearings had been held in the consolidated cases and hundreds of orders made affecting numerous parties and things besides the main litigants so that it became apparent, before complying with the insistent demands of appellants' counsel, and in order to properly carry out the terms of the mandate

that considerable care and study were required of all the matters involved, as the mandate, in addition to requiring specific things, commands such further proceedings, "in conformity with the opinions and judgments of", the Appellate Court, "as according to right and justice, and the laws of the United States, ought to be had, the said appeals notwithstanding,".

Counsel for the San Francisco Bank and counsel for the United States Attorney's Office and the office of the Attorney General indicated considerable provocation and impatience because this court would not forthwith either spread the mandate and enter the judgments which they submitted for entry without an opportunity for this Court to again read and study the opinions of the Appellate Court and in light of them endeavor to make such orders as in conformity with them and according to right and justice and the laws of the United States ought to be had, the said appeals notwithstanding.

There was then (May 25, 1953) a stay in force, ordered by the appellate court, pending the *final* disposition of cases 12511 and 12591, which stay would have prevented action by this court until disposition of the petitions for rehearing before the Supreme Court, above mentioned. The petitions for rehearing were not denied by the Supreme Court until June 9, 1953, 345 U.S. 978, 73 S. Ct. 1120 and not brought to the attention of this court until sometime later.

The matter again came on for hearing on June 22, and 24, 1953, at which times I was (and advised all counsel that I was), then engaged in the trial of a water rights case at Fresno which had been continuing for some 18 months and which required my presence in Fresno every day of each week except Monday, and beginning in the first part of July it was the duty of this Judge to take the criminal calendar of this court which requires the hearing of all arraignments and pleas and the trial of

all criminal cases consuming less than three days for a period of three months' time, and consumes all of a judge's time.

At the various hearings, the Court suggested that, in view of the fact that the mandate covered many things other than the two orders from which appeals were taken, counsel for the prevailing parties on appeal should prepare and submit whatever judgments and orders in their opinion were required to be made and signed by this court.

On July 16, 1953 counsel for the prevailing parties on appeal accordingly filed 14 different judgments and orders as follows:

Proposed Judgment No. 1 — Judgment on Mandate.

Proposed Order No. 1 — Order Dismissing Complaint, Amended and Supplemental Pleadings Pursuant to Mandate.

Proposed Order No. 2 — Order Dismissing Cross-Claim and Third Party Complaint of Long Beach Federal Savings and Loan Association, and All Amendments and Supplements Thereto, Pursuant to Mandate.

Proposed Order No. 3 — Order Dismissing Cross-Claim of Federal Home Loan Bank of Los Angeles Pursuant to Mandate.

Proposed Order No. 4 — Order Dismissing Cross-Claim in Interpleader of Title Service Company, and All Amendments and Supplements Thereto, Pursuant to Mandate.

Proposed Order No. 5 — Order Dismissing Cross-Claim in Interpleader of Robert H. Wallis, and All Amendments and Supplements Thereto Pursuant to Mandate.

Proposed Order No. 6 — Order Directing Delivery of Documents and Collateral to Federal Home Loan Bank of San Francisco Pursuant to Mandate.

Proposed Order No. 7 — Order Vacating Order of Preliminary Injunction Pursuant to Mandate.

Proposed Order No. 8 — Order Dismissing Cross-Claim in Interpleader of George Turner Pursuant to Mandate.

Proposed Order No. 9 — Order Dismissing Cross-Claim of Roy E. Hegg Pursuant to Mandate.

Proposed Order No. 10 — Order Dismissing Complaint in Intervention of John D. Willhoit Pursuant to Mandate.

Proposed Order No. 11 — Order Vacating Orders Re Accounting by A. V. Ammann Pursuant to Mandate.

Proposed Order No. 12 — Order Vacating Orders Re Discovery and Inspection Proceedings, Pursuant to Mandate.

Proposed Order No. 13 — Order Denying Petition and Supplement to Petition to Interplead or Deposit in Court Disputed Stock Subscription Demands of First Federal Savings and Loan Association of Bellflower, California, Pursuant to Mandate.

5. All matters again came on for hearing on August 3, 1953, at which time I indicated to counsel that I would be unable to hear the arguments on the various motions and opposition thereto until after the completion of the criminal calendar at the end of September, and set the matter down for hearing with the consent of all counsel, to begin on October 12th, at which time I would not only hear counsel in connection with the proposed judgments and orders, but also hear all motions which had been set in the related case, No. 13979—Federal Home Loan Bank of San Francisco v. Long Beach Federal Savings and Loan Association, which had been filed in the Superior Court of California on March 27, 1952, and removed to this court, and a motion to remand denied. Action 13979 was a suit by the San Francisco Bank to collect on notes of the face amount of $6,300,000 signed by the conservator, and to foreclose on claimed security therefor.

Inasmuch as many of the matters involved in the consolidated cases 5421 and 5678 are also involved in 13979, it was felt necessary that they should be heard together, and accordingly, on October 12th hearing was commenced on the motions for and against the above mentioned judgments and orders in 5421 and 5678, and the following motions in 13979:

1. Hearing on Report of Receiver and Petition for Instructions

2. Hearing on Motion of Federal Home Loan Bank Board to quash service of summons made pursuant to court order filed 3-3-53

3. Hearing on motion of Home Investment Co. et al. for summary judgment quieting title to homes of 8000 borrowers against foreclosure of loans paid in full, and motions for summary judgment quieting title of trustee, Title Service Co. and beneficiary Long Beach Federal Savings & Loan Assn. pur. not. filed 5-21-53

4. Hearing on motion of Plaintiff to

(a) Dismiss Homeowners cross-claim for quiet title, and

(b) Strike and drop Home Investment Co. as a party pur. not. filed 5-29-53

5. Hearing on motion of Plaintiff

(a) To drop parties

(b) or for severance and early trial fld 6-5-53

6. Hearing on Motion of Plaintiff

(a) to dismiss cross-claim of defendant Long Beach Fed. Sav. & Loan Assn.,

(b) To strike said cross-claim, fld 6-5-53

7. Hearing on Motion of Plaintiff

(a) To vacate order granting leave to Title Service Co. to intervene and to file its complaint in Intervention and Interpleader, and to strike said pleading,

(b) To dismiss said complaint in Intervention, fld 6-5-53

8. Hearing on Motion of Plaintiff to dismiss 3rd party complaint of Long Beach Fed. Sav. & Loan Assn. (Fld 10-10-52) fld 6-5-53

9. Hearing on Motion of Plaintiff

(a) To vacate order granting leave to Robert H. Wallis to intervene and to file its complaint in intervention and interpleader, and to strike said pleading,

(b) To dismiss said complaint in intervention fld 6-5-53

10. Hearing on Motion of Plaintiff to strike from Answer of deft. Long Beach Fed. Sav. & Loan Assn. fld 6-5-53

### Audit of funds in Court

As noted, sub-paragraph No. 3 of the Mandate directs the return of certain bonds and cash in the registry of the court in the within actions, to the Federal Home Loan Bank of San Francisco.

The money on deposit in court was derived not from a single source but from many and as the result of many interpleaders and interventions. And before making any order concerning a definite amount of money it appeared only reasonable and proper that an audit

should be made of the funds on deposit in court with a statement as to their source so that in making any order in compliance with the mandate, compliance also might be had with the rules concerning disposition of money deposited in court, laid down by the Ninth Circuit in Berdie v. Kurtz, 88 F.2d 158. I suggested to the parties that each side might select an auditor and two of them go over the records jointly so that there would be agreement among the parties and not leave such a simple matter to the querulous contentions which have marked this case already overloaded with a multitude of various contentions and innumberable angry and distracting clashes between the many counsel.

The Long Beach Association did make such an audit which was filed on July 16, 1953, and a summary and recapitulation thereof filed on July 23, 1953. Neither the San Francisco Bank nor the parties represented by the United States Attorney saw fit to make such an audit, or if so they did not see fit to aid the court by filing a copy of it. In connection therewith the court has received only a letter from Mr. Hoffman, one of the counsel for the San Francisco Bank dated September 25, 1953 which, on its face, is not complete. The Court will, therefore, accept as true and accurate the audit and summary and recapitulation thereof as to source of funds, and amounts, made and filed by the Long Beach Federal Savings & Loan Association.

### The Appellate Court stay and other pending appeals

It should be mentioned also that during the pendency of the appeal, while no stay was in effect, this court appointed a Receiver for the purpose of bringing suit both in the federal court and the state court to preserve the running of the statute of limitations against certain asserted causes of action or liability in connection with the administration of the affairs of the Long Beach Association by the conservator and his relationship with the San Francisco Bank. An appeal was taken from the order appointing the Receiver and is currently pending undecided along with appeals taken by the San Francisco Bank from various, but not all, of the orders allowing fees to the Special Master.

Pursuant to the order appointing the Receiver he filed two actions, one in the state court which was removed to this court, and one in this court. Thereafter, a stay of all proceedings in the within consolidated cases, 5421 and 5678, and the Receiver's actions, was made by the appellate court on November 13, 1952 "Until the final disposition of cases No. 12511 and 12591; except that said District Court is hereby permitted to entertain and determine the cause designated as 13979–PH filed in said (this) District Court."

The petitions for rehearing were denied by the Supreme Court on June 9, 1953. On June 24, 1953 the above mentioned mandate of the U. S. Court of Appeals was ordered spread in this court.

I therefore regard the disposition of appeals No. 12511 and No. 12591 as final, and the stay as terminated.

As above stated, appeals are pending undecided in 5421 and 5678 from the order appointing the Receiver and from certain allowance of fees to the Special Master but no stay has been issued in connection therewith and I shall proceed accordingly.

### The Preliminary Injunction of December 2, 1949 (Proposed Order No. 7).

Paragraph numbered "4" of the mandate directs this court to "set aside and vacate said order of preliminary injunction entered the 2nd day of December, 1949."

I indicated to all counsel from time to time from the outset of the various hearings since the mandate came down that, whatever else may be said concerning the opinions on appeal and the mandate, there could be no doubt that both the opinion in 12511 and the mandate intended and required that said order of injunction be reversed. It was the only order on which the appeal was taken.

I also indicated to counsel that it seemed to me that an order should be made as promptly as possible to vacate the order of preliminary injunction of December 1, 1949, in order that such administrative hearings might be as promptly proceeded with as were deemed advisable. I also indicated that if counsel would request it I would as promptly as time and the press of other duties would permit, make such an order. Accordingly, without adopting the forms of order proposed by either the prevailing parties on appeal, or the one proposed by those opposing them, I dictated an order dissolving the injunction of December 1, 1949 and filed it September 21, 1953. Paragraph "4" of the mandate is thus complied with.

### The Dismissal of Action No. 5678 at the cost of Plaintiffs

The mandate, in paragraph "1", directed that this court "dismiss Civil Action No. 5678–PH at the cost of plaintiffs".

No costs were set forth in the mandate.

During the course of the litigation, among the many hundreds of other orders made, an order was made with the consent of, among others, the Long Beach Association and the defendant officials speaking through the U. S. Attorney and the Attorney for the Home Loan Bank Board, appointing Ronald Walker, (then Assistant United States Attorney who had been handling the within litigation for the defendant officials), as Special Master, for the purpose of supervising and directing the carrying out of Order No. 388 of the Home Loan Bank Board and the order of this court of January 23, 1948, directing the return of the Long Beach Association and its assets and properties to the regularly elected officials of said Association and for an accounting by Ammann to the shareholders, and supervising the election of a Board of Directors of said Association, no meeting of shareholders having been had, or election of such officers, since prior to the conservatorship.

Thereafter, on motion for discovery, the court appointed said Ronald Walker as Special Master to supervise the discovery proceedings. The motion for discovery was made by Long Beach Association and its affiliated defendants and was joined in by the plaintiffs in 5678. The purpose of appointing the Special Master was principally to protect the San Francisco Bank in connection with the conduct of its affairs and to protect the public interests against any disclosure of confidential matters which might concern the San Francisco Bank and the affairs of other building and loan associations, or might otherwise affect the public interest.

The Special Master performed rather prodigious duties in connection with the turn-back of the Association, the election of directors and the meeting of shareholders, and in connection with the discovery proceedings. No final report has yet been made by the Special Master. Interim reports have been filed and interim allowances on his fees, but no final order fixing his fees either on the turn-back and accounting or on the discovery have been made, and, as above stated, appeals are now pending on some, but not all, of the orders allowing fees to the Master.

There can be no doubt concerning the duty of this court in connection with the mandate. It was ordered spread and under the decisions it is my duty to carry it out without attempting to question the correctness of either the appellate court's opinion or decision or the correctness of the mandate. As stated in Thornton v. Carter, 8 Cir., 109 F.2d 316, at page 320, "A mandate is completely controlling as to all matters within its compass, but on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." Many other authorities are to the same effect but it would be a matter of supererogation to cite them.

It does not appear to me at this time that the plaintiffs, in action No. 5678, should be burdened with any of the costs

resulting from allowance of fees and costs to the Special Master in connection with carrying out order No. 388 and the order of this court of January 23, 1948 directing the turn-back and accounting. But, the plaintiffs in action No. 5678 joined in the motion for discovery and inspection of documents, (at last report approximately 44,000 were marked by the Special Master on the inspection hearings), and it seems to me that the plaintiffs in action No. 5678 should be made to bear a portion of such fees as part of the costs in compliance with the mandate. The mandate clearly requires a judgment of dismissal of Civil Action No. 5678 but there are two steps in the judgment, one is the *making* of the judgment to be settled and approved as provided in Rule 58, Fed.Rules Civ.Proc. 28 U.S.C., and the other is the entry thereof. Rule 58 provides that the *entry* of judgment shall not be delayed for the taxing of costs. Whether or not a portion of the fees of the Special Master in connection with the discovery proceedings can be assessed as costs against the plaintiff in Civil Action No. 5678 is a question which none of the parties has seen fit to touch upon or to brief. Also, whether or not, if they are assessable as costs, it should be done before the making and the entry of the judgment of dismissal, they have likewise not seen fit to discuss or to brief or inform the court of their position whatever.

There has been paid out of funds on deposit in court a sum in the neighborhood of $10,000 as costs incurred by the Special Master on the two references to him for clerical help, court reporters, photostating, microfilming and the like. In addition to that the sum of $61,000 has been allowed and paid to the Special Master out of funds on deposit in court as fees on interim or partial allowances only. No final report of the Special Master on either the turn-back proceedings and accounting, or the discovery and inspection proceedings has been made or approved and in none of the orders for allowance of fees to the Special Master was there any determination or indication of a determination of the total amount of fees to be allowed or the total value of his services. There has likewise been no order of court allocating the fees and costs as charges against the various parties or any party to the action under Rule 53(a), F.R.C.P. which provides that "The compensation to be allowed to a master shall be *fixed by the court,* and *shall be charged upon such of the parties or* paid out of any fund or subject matter of the action, which is in the custody and control of the court as the court may direct." The rule also permits execution to be issued for such fees.

While the fees and costs were paid out of funds on deposit in court the matter of who they would or should ultimately be charged against was not at any time settled. None of the funds on deposit in court were received from any of the plaintiffs in action No. 5678.

Regardless of what disposition is made with relation to the reference to the Special Master on the turn-back proceedings and the accounting thereon under the previous order of this court of January 23, 1948 and Order No. 388 of the Home Loan Bank Board, it seems clear to me that the reference to the Special Master for discovery and inspection should be wound up under the mandate and the decision in 12591, as promptly as possible by a final report of the Special Master and a hearing thereon and a final order fixing additional fees and costs, if any, and making an allocation of the charges under Rule 53 (a) therefor upon such of the parties to this action as may be liable therefor. This is particularly so in view of the holding of the appellate court as to the lack of jurisdiction of this court in action 5678 and the clear terms of the mandate to dismiss 5678 at the *costs of the plaintiffs.* This has been partially done by requiring counsel for plaintiffs in action 5678 to redeposit the $75,000 allowed them as fees.

The principal reason for the appointment of the Master was for the protection of the San Francisco Bank and its

member Associations and its, and their, records.

It is conceivable that a portion of the Master's fees and costs could or should be assessed against the San Francisco Bank. See Associated Almond Growers v. Wymond, 9 Cir., 69 F.2d 912. However, it is neither necessary nor appropriate to determine this issue at this time.

■ While the San Francisco Bank is entitled to have 5678 dismissed as promptly as possible there can be no injury come to the Bank or its security by postponing such dismissal until such time as the Master makes his final report and until such time as the matter of whether or not "according to right and justice and the laws of the United States, the said appeals notwithstanding", a portion of the costs and fees of the Special Master should or should not be assessed against and paid by the plaintiffs as specifically required by the mandate, or others in action No. 5678.

In the course of deliberation on this matter it occurred to me that action 5678 could be dismissed and that possibly any costs and fees which might be assessed against the plaintiffs in action 5678, because of the discovery and inspection proceedings, might be assessed in action 5421 because of the cross-complaint filed in that action by the Los Angeles Bank seeking practically, if not identically, the same relief sought originally by the complaint in action 5678. But recourse to the record (printed record page 564) discloses that the cross-claim in action 5421 was filed only by the Federal Home Loan Bank of Los Angeles and did not contain any allegations as a class action by the six so-called member associations as was included in the original complaint in 5678. The Los Angeles Bank, by the opinion in 12591, is now non-existent and according to that opinion has been non-existent since March 1946. Any judgment for costs in 5421 against the Los Angeles Bank alone would, therefore, be a futile and idle act, and it appears that

it would certainly not be in compliance with the mandate or according to right and justice unless the contrary is shown at a hearing on that subject. Hence, costs, if a judgment for costs against the plaintiffs in 5678 results, can only be collected from the six so-called member associations who joined in 5678, but not in the cross-claim in 5421, as plaintiffs or possibly from all of the members of the class they represent.

Certainly the appellate court, in requiring the dismissal of 5678 at the "cost of plaintiffs," did not intend an idle and ineffective act, but intended that whatever the costs were they should be *paid* by plaintiffs in 5678. The procedure I am adopting thus appears to be the only means of effecting such payment and complying with the mandate, as a writ of execution for costs against the non-existent Los Angeles Bank would be wholly useless.

And I, therefore, deem it in strict compliance with the express terms of the mandate that such costs and fees be allocated and charged under Rule 53(a) so that at the time of dismissal the matter of the liability of the plaintiff in action 5678 for such share, if any, of the Master's fees and costs for the discovery proceedings may be settled and set forth by appropriate judgment or order.

■ The fees and costs of the Special Master do not appear to be included within those which might be settled by the Clerk under Section 1920 of Title 28 U.S.C.A. Such fees and costs must be fixed and assessed by the Court. Furthermore, Rule 54(d) permits the court to review any action by the Clerk. And it has been demonstrated upon many occasions in this lawsuit that any appellate review will not be lightly passed by any of the litigants.

A copy of this memorandum will be furnished the Special Master who will regard it as a direction to forthwith file a final report and account on the discovery proceedings and request for further fees and costs, if any, and notice the same for hearing.

Upon settlement thereof and the charging of costs thereon under Rule 53 (a) against the litigants in the consolidated cases 5421 and 5678 the reference to the Special Master for the purposes of discovery and inspection will be formally terminated and the Master discharged in connection with the discovery and inspection; an Order will then be made severing action 5678 from action 5421 and a judgment made of dismissal and for costs incurred against the plaintiffs in 5678 in accordance with the terms of the mandate.

Observations concerning Construction of Mandate, Opinions of Appellate Court and Proposed Orders Nos. 1, 2, 3, 4 and 5.

Before proceeding to a discussion or decision of the other proposed orders and motions listed earlier in this memorandum, it is necessary to make some observations concerning the construction of the mandate and the opinions of the appellate court. As heretofore indicated, I deem it my duty to follow the mandate where it is specific, and to do such other things, "as in conformity with the opinions and judgments of the appellate court, as according to right and justice, and the laws of the United States ought to be done, the said appeals notwithstanding."

A great deal of time and care was obviously spent by the appellate court in the preparation of the long and detailed opinions. Obviously considerable care was exerted in connection with the preparation of the mandate. It is clear from the mandate and the opinion in 12591 (the attorneys' fees appeal), that the court held, and intended to hold, that no jurisdiction existed in this court to entertain civil action 5678 and that the entire action should be dismissed.

Counsel for the Home Loan Bank Board and the San Francisco Bank argued with more heat than illumination that certain occasional phrases in the opinion in 12511 (the injunction appeal) held there was lack of jurisdiction of action 5421. And basing their contention thereon, instead of on the whole opinion, contended that this court should dismiss action 5421 in its entirety. After a careful re-reading of both of the appellate court's opinions several times, as well as the mandate, I cannot agree with that contention.

As indicated, the opinion of the appellate court was carefully prepared and likewise the mandate. On the face of the mandate it becomes apparent that the appellate court intended a *different result in 5421* than they did in *5678* inasmuch as they used the plain language, "dismiss *civil action 5678*" and, "*dismiss the following pleadings* in civil action *5421*". Had it intended to hold in 12511 that the District Court had no jurisdiction at all, as they did in their opinion on the appeal on the attorneys' fees, No. 12591, I must indulge the presumption that they would have plainly said to *dismiss* civil *action 5421* as they did say to dismiss civil action 5678 instead of directing this court to "dismiss the *following pleadings* in civil action 5421."

But clearly the court held that the Administrative Procedure Act applied to proceedings for the appointment or ousting of a conservator, an issue in action 5421. And clearly held that "such a final administrative determination would have been subject to a judicial review at the behest of Association", 196 F.2d 375, and that the Administrative Procedure Act applied to pending cases 196 F.2d at page 382. And specifically the court, by footnote 15, at page 379 of 196 F.2d stated: "We express no opinion as to whether the lower court or a federal court in the District of Columbia would have had jurisdiction to review the final order or 'determination' of Administration."

Neither of the appeals were before the appellate court on the merits. *There has never been any administrative hearing either on the appointment of the conservator or on the rescinding of the order appointing him or on his accounting.* And the very order which was on appeal to the appellate court enjoined any such administrative hearing, so such fact was well known to the appellate court in

making its opinion. I cannot read the opinion of the appellate court in 12511 or the mandate as compelling any other conclusion than that action 5421 was *premature* and that was so because the parties had not exhausted their administrative remedies before the Home Loan Bank Board, and that after such an administrative hearing an action will lie *someplace*, either in this court or in the District of Columbia for judicial review in "one package" 196 F.2d at page 390.

This conclusion is further fortified by the fact that the mandate is specific as to the dismissal of only *certain pleadings* out of the dozens which have been filed and were in the record on appeal, and the vacation of only *two orders out of the hundreds* which were likewise in the printed record on appeal and which had been made and entered and involved and concerned interpleader and intervention actions by several hundred persons owning property and having loans from the Association, as well as many others. Had the appellate court intended a dismissal of action No. 5421 and to do otherwise than limit its mandate and its opinion, it would not have been so specific in connection with the terms of the mandate requiring the dismissal of the pleadings only.

Had the appellate court intended to dismiss action 5421 on the grounds of lack of jurisdiction, it would have been entirely unnecessary to have included all of the directions in the mandate which are carried in paragraph No. "2 a, b, c, d and e", paragraph No. "3", and paragraph No. "4"; all of those things would have been accomplished by a simple order directing this court to dismiss action 5421 as it did as to action No. 5678 and all of the things specifically designated in paragraphs 2, 3 and 4 would have occurred as of course.

Moreover, there were many orders made in the consolidated proceedings which were regarded by all parties as *final* orders. Under the appellate court opinions this court must determine as to all of them whether such were, "ancillary", or whether "independent",

grounds of jurisdiction existed. The appellate court obviously did not desire to disturb them, otherwise it either would have directed the dismissal of the action or the vacation of such orders. Reference to a few of such orders demonstrates the point.

Entirely apart from the interpleader of Title Service Company as owner under trust deeds of the legal title to many hundreds of parcels of land, persons owning the beneficial interest and purchasing over 400 separate parcels upon which residences either had been constructed, or were in course of construction, filed 51 interpleader-interventions and final orders were made thereon. While the attorneys for the San Francisco Bank refer to all interventions and interpleaders and the issues raised thereon, as "spurious", "specious", "blatantly specious" and like invectives, an appropriate judicial approach thereto will not permit them to be brushed off so easily.

The fact is, and has never been denied by anyone, that such owners were paying off loans on individual houses to the Long Beach Association which loans were secured by trust deeds upon their property under which trust deeds the legal title of each parcel was held by a third party as trustee; that the conservator then claimed the right to have payments on such loans made to him as conservator at the same time that the Long Beach Association, the Shareholders Protective Committee were claiming the conservator had no such right and that payments thereon should be made to the regularly elected officers of the Association; that such owners desired (as they were entitled to do), to pay their obligations on such notes and trust deeds in full and receive clear and merchantable titles to their property; and that if such owners paid to one or the other of the contending factions they ran the risk of possible liability to whichever contending faction might ultimately prevail in either an administrative or judicial proceeding.

██ At the time of filing those interpleader-interventions, there was thus

clearly an "independent" ground of jurisdiction under the interpleader statute, 28 U.S.C. § 1335 (then 28 U.S.C. § 41). Jurisdiction under the interpleader statute does not depend upon which of several claimants may ultimately be held to be right or wrong. The essence of it is that one holds money or property and that two or more claimants who are adverse to one another "are claiming or *may* claim to be entitled to such money or property, or to any one or more of the benefits * * * arising by virtue of any such obligation". The statute is thus very broad.

The validity of the appointment of the conservator had not then been, and it is contended by the Long Beach Association that it has not yet been, determined on the merits, either by administrative hearing or judicial proceedings in review thereof.

By the terms of order 2015, 14 F.R.D. 273–289, footnote 11, all of grounds originally asserted as the basis for the appointment of the conservator are reincorporated by reference to the more definite statement therefor of May 20, 1946, 14 F.R.D. 273 at page 280, footnote 4. And no hearing has yet been had on Order 2015 but the order of September 21, 1953, vacating the injunction of December 2, 1949, clears the way for such process to now begin.

During the pendency of the proceedings this court, from time to time, made orders on the above mentioned interpleader-interventions, which orders required the deposit of money in court by the property owners, the execution of simultaneous requests for reconveyance by the conservator and by the Long Beach Association, and the execution of reconveyances by the Trustees holding legal title to the various properties. If such orders were not final orders, and if action 5421 were dismissed, then instead of such transactions being *fait accompli*, the parties who obeyed such orders would be in a position to claim that their acts in compliance with such orders might be vacated on the ground that they were not voluntary but were coerced by an invalid order. Such contention might appear to be far-fetched, but one cannot foresee in this litigation what contentions may be made by either the San Francisco Bank, the Home Loan Bank Board, the Association, or others and be ultimately right. One of the functions and duties of this court is to exercise its powers so as to avoid future litigation. If such contentions are made it will cause a cloud upon the title of the property owners who in this litigation are innocent third-parties and should be removed from the maelstrom of this litigation. As hereinafter appears, the Home Loan Bank Board, the official defendants and the Federal Savings & Loan Insurance Corporation, have filed pleadings after the turn-back order in January 1948, alleging that Ammann is still conservator, albeit their final and present position is somewhat confused by subsequent pleadings. Such orders must have been recognized by the appellate court as final orders, or it would have directed the vacation of such orders and not limited its mandate to the vacation of only two orders out of all that have been made, or it would have directed the dismissal of the action. On page 85 of the brief filed by the appellants in 12511 it is stated that such orders are regarded as final orders. If they were *final* orders then a dismissal of action 5421 would cut the ground out from under them, and lay the groundwork for further extensive litigation, which should and can be, and is avoided, by the terms of the mandate as I interpret it.

I therefore conclude that from the two opinions and the mandate that the appellate court did not intend that action 5421 should be dismissed.

Accordingly, I shall by separate and appropriate order dismiss the following pleadings in civil action 5421–PH:

(a) The complaint of Mallonee, Bucklin and Fergus, and all amendments and supplements thereto, at the cost of said complainants;

(b) The cross-claim and third-party complaint of Long Beach Federal Sav-

ings and Loan Association, and all amendments and supplements thereto, at the cost of third party-complainant and cross-claimant;

(c) The cross-claim of Federal Home Loan Bank of Los Angeles, and all amendments and supplements thereto at the cost of said cross-claimant;

(d) The cross-claim in interpleader of Title Service Company, and all amendments and supplements thereto, at the cost of said cross-claimant;

(e) The cross-claim in interpleader, and all amendments and supplements thereto, of Robert H. Wallis, at the cost of said cross-claimant.

The order for dismissal as to Wallis will provide for the return to Wallis of the $50,000 cashiers check. While I felt that independent grounds of jurisdiction always existed as to the Wallis controversy, under the interpleader statute, I have no choice but to obey the mandate.

### Order No. 8, re George Turner interpleader.

Proposed Order No. 8 is an order for the dismissal of the cross-claim and interpleader of George Turner. Obviously the appellate court considered this to be in a different category than Title Service and Wallis interpleaders as it was not specifically included in the mandate, although mentioned in the opinion. This complaint in interpleader was filed in the within action by reason of the allegation that Ammann, the conservator, gave notice to Turner of the termination of a lease on property which the Association had leased to Turner. The Association and the shareholders were demanding that Turner pay the rentals in accordance with the terms of the lease, and, Turner claiming to be confronted by conflicting demands from the conservator that the lease was terminated, and the demands of the Association and the shareholders' committee that it was not, deposited in court the rentals accrued and continued to do so, during the period of the conservatorship. As heretofore appears by Order No. 388,

and by Order of this court made on the 23d day of January, 1948, the Association was returned to its officers and directors.

If that were all there were to it and if, as government counsel contended in their brief on appeal in 12511 (pages 34 and 35 thereof and footnote 4) that the order of January 23, 1948, terminating the conservatorship and directing the return of the Association was a, *"final order* and no appeal having been filed within the time allowed, the *propriety thereof is no longer open for consideration,"* it would be a simple matter and would require the dismissal of the Turner interpleader as there would then be no dispute or controversy between two contending factions, with Turner being caught in the middle. But such is not the case as shall presently appear. The Board of Trustees for the Federal Savings and Loan Insurance Corporation are the members of the Federal Home Loan Bank Board. Thus the same persons who are members of the Home Loan Bank Board act in a dual capacity as members of the Home Loan Bank Board and as trustees of the Federal Savings and Loan Insurance Corporation. Title 12 U.S.C.A. § 1725. The Federal Savings and Loan Insurance Corporation has filed various pleadings in which it is asserted in varying ways that A. V. Ammann, in spite of the Order No. 388 of the Home Loan Bank Board rescinding the appointment of Ammann as conservator and directing the return of the Association, is and always has been, *and continues to be, the conservator for said Association.* Typical of such allegations is the following, taken from the *Answer* of the Federal Savings and Loan Insurance Corporation to Amended Cross-Claim and Supplemental *Cross-Claim* of *Long Beach Federal Savings and Loan Association dated July 18, 1949,* wherein it is alleged *inter alia* (printed record page 7030), "This defendant further states that said A. V. Ammann has continued to be, and is now, the proper and

duly designated conservator for said Association * * * ".

This allegation is adopted not only by the Federal Savings and Loan Insurance Corporation but by the Home Loan Bank Board and all of the official defendants in their "*Answer* to the Second Supplemental *Cross-Claim* of the *Long Beach Federal Savings and Loan Association* upon the Conservator's Bond and against the Federal Savings and Loan Insurance Corporation" by the following allegation (printed record page 7061):

"These defendants incorporate all of the denials and statements made in their answer to the Amended Cross-Claim and Supplemental Cross-Claim of the Long Beach Federal Savings and Loan Association, and in their answer to the First, Second and Third causes of cross-claim." That answer was likewise dated and filed July 18, 1949.

The situation is further confused by an *answer* filed November 14, 1949, by the Federal Savings and Loan Insurance Corp. to the second supplement to *cross-claim* in interpleader of *George Turner* and to said cross-claim in interpleader and supplement thereto (printed record pages 8161 and 8163) wherein it realleges the defenses, answers and allegations in the previous answer filed to the various pleadings of the Long Beach Federal Savings and Loan Association "except that this defendant admits that the legal conclusion alleged in said answer that defendant A. V. Ammann has been conservator for the Association since January 24, 1948 is erroneous and admits that the order of this court of January 23, 1948 to the extent that said order purported to remove said Ammann as conservator and restore the operations of said association to its former management, became final on execution thereof."

And an answer filed the same date by the defendants Home Loan Bank Board, its members and the other official defendants to the Turner cross-claim in interpleader and supplements thereof, (printed record page 8163) "that on January 24, 1948 the defendant Ammann was removed as conservator by order of this court, which order insofar as it purported to remove the defendant Ammann, to restore the operations of said Association to its former management was finally executed and became final on January 24, 1948; and that after the time for appeal from said order expired, neither the defendant Ammann nor any of these defendants, has ever asserted and does not now assert, any claim either on behalf of themselves or the defendant Association to said leasehold or to any rentals accruing thereunder."

The latter allegations in answer to Turner's interpleader are contrary to the allegation in the answers of said Federal Savings and Loan Insurance Corp., the Board, and the official defendants, to the pleadings of the Long Beach Association, hereinabove quoted, and no amendment has ever been made to the latter mentioned answers. So that there is in one set of pleadings an assertion that Ammann always has been and still is the conservator, and in another set the contrary appears. The Federal Savings and Loan Insurance Corporation, the Board and the official defendants are thus like the proverbial cat which stays in a position to jump both ways, and which way they are going to jump cannot be seen until at least after an administrative hearing on Order No. 2015, as shall presently appear. One of the grounds for the appointment of Ammann, as contained in the More Definite Statement of Causes dated May 29, 1946, full text see 14 F.R.D. 273 at page 280, footnote 4, is that "(i) on or about May 8, 1946 the said Association through its officers, executed a purported lease on a hotel property located at 322 American Avenue, Long Beach, California, owned by it, to one George Turner for a twenty-year period on terms, which, in effect, would give to the said Turner the use of said property without adequate consideration therefor to said Association." While the hearing on that order was indefinitely postponed in November 1947 and the Board made its order No. 388 on January 17, 1948, rescinding the ap-

pointment of Ammann and directing the return of the Association from the conservator, the Home Loan Bank Board nevertheless, on September 9, 1949, by its order No. 2015 set another administrative hearing (this is the order, hearing upon which was enjoined by the order of December 2, 1949 resulting in appeal 12511) and reincorporated all of the asserted violations set out in the More Definite Statement of May 29, 1946, including the assertion hereinbefore quoted as paragraph (i) of said More Definite Statement of May 29, 1946.

As indicated, the Home Loan Bank Board is now free to go ahead with the administrative hearing originally ordered by its order No. 2015 in which the attack upon the Turner lease is made, by charging it as an act of mismanagement by the officers of the Association. Thus the only conclusion which can be reached from the rather confusing allegations contained in the various answers to the Turner interpleaders and from order 2015, is that Turner is still confronted with the assertion of invalidity of his lease on the part of the Home Loan Bank Board during the period of the conservatorship, if not afterward. It may well be that at the administrative hearing which is now free to be had by the Home Loan Bank Board on its order 2015, said assertion will be abandoned or the Board may disapprove that allegation. In that event Turner, of course, would have no cause of action in interpleader. It is not intended to suggest that the Board has any plenary jurisdiction to determine the validity or invalidity of the Turner lease.

■ It seems to me that in view of the fact that there was no specific direction in the mandate for the dismissal of the Turner cross-claims which were before the appellate court, and in view of my construction of the opinion in 12511 that the administrative procedure must be first exhausted before any judicial review can be had anywhere, that this court should not now make any order disposing of the Turner interpleader. If the parties involved, i. e., Turner, the Association, the Home Loan Bank Board, or Ammann (if he still claims to be conservator) desire disposition of the Turner matter at anytime, such party may by appropriate motion bring the matter on for hearing. In the meantime the Turner interpleader can remain in *status quo*, to the injury of no one.

### Proposed Order No. 9—the Cross-Claim of Hegg.

Proposed Order No. 9 orders the dismissal of the cross-claim of Roy E. Hegg, filed July 30, 1948 (printed record page 4725 at 4760). From the cross-claim which accompanied an answer filed by Hegg, it appears that he was a director of the Federal Home Loan Bank of San Francisco and severed himself from the other defendants, answering separately and cross-claimed for declaratory relief as to the conflicting claims of the Los Angeles Bank, the Portland Bank, and the San Francisco Bank.

Mr. NeCasek, counsel for Hegg, stated during the argument that Hegg had died April 24, 1953, which fact was stipulated to by all parties present. An examination of his pleading indicates that his action was purely a personal one insofar as the cross-claim was concerned, and it is, therefore, unnecessary to await the statutory period for substitution of the executor or administrator of his estate.

Furthermore, the allegations of his cross-claim and the prayer thereon for declaratory relief are answered by the opinion of the appellate court on the attorneys' fees proceeding, No. 12591, in holding that this court had no jurisdiction to entertain an action concerning the establishment of the San Francisco Bank. The Hegg cross-claim will, therefore, be dismissed by appropriate order.

### Proposed Order No. 10, re Willhoit Intervention.

Proposed Order No. 10 relates to the dismissal of the complaint in intervention of John D. Willhoit, filed October 27, 1952 after the appellate court had filed its opinion in 12511 on April 2,

1952, and before the appellate court filed its opinion on the attorneys' fees in 12591 on November 2, 1952, and before any applications for certiorari or action thereon by the Supreme Court and before the Order of Stay of Proceedings, made by the appellate court on November 13, 1952. Willhoit's claim for relief is an unusual one (as so many things are in connection with this case), in that he asserts that certain original records of his were in the possession of the Long Beach Association on the day the conservator took possession of the Association, and that the conservator took possession of his original books and records and that he has since been unable to find them, although on the filing of his motion approximately one million dollars worth of cancelled checks of the Association, were produced in court by the U. S. Attorney, the possession of which had theretofore been denied by the conservator. It is asserted by Willhoit that the production of his original records is necessary for him to use in connection with an income tax investigation.

As heretofore indicated, the stay was terminated by the coming down of the mandate in 12511 and 12591. But an examination of Willhoit's complaint indicates that his claim for relief really has to do with the accounting ordered to be made by the conservator by order No. 388 of the Home Loan Bank Board and by the order of this court of July 23, 1948. So that whatever is done in this case with relation to Willhoit's complaint must stand or fall by whatever is done with relation to the accounting of the conservator. It is unnecessary to now determine whether or not Willhoit would have an independent cause of action for damages against Ammann personally as bailee.

Proposed Order No. 11 concerning
the turn-back Order of
Jan. 23, 1948.

Turning now to proposed order No. 11, and the motion thereon, which asks this court to vacate the order of January 23, 1948 and the order of reference to the Special Master concerning the turn-back proceedings and an interim order concerning accounting of the conservator dated February 10, 1950:

As heretofore indicated it is my conclusion that a claim for relief in connection with either the appointment of the conservator, his conduct while conservator, or his accounting, cannot be judicially reviewed until after the conclusion of administrative hearings. During the course of the hearing beginning October 12, 1953 the court endeavored several times to secure from Mr. Silverman (Associate General Counsel for the Home Loan Bank Board, and appearing for it and the official defendants by special order of this court), a reference to any provision of the Code of Federal Regulations which provided for an administrative hearing on the accounting. I regret to say that Mr. Silverman was anything but helpful in that connection as he referred me to Title 24 C.F.R. § 147.9(a) which requires the filing with the Home Loan Bank Board of a detailed report, and to Title 24 C.F.R. § 107.10 as the provision which would permit administrative hearing by the Home Loan Bank Board on the accounting of a conservator. But an examination of § 107.10 reveals that it covers only the matter of hearings on regulations or proposed amendments thereto. The failure of Mr. Silverman to aid the court is in part reflected by the following colloquy which occurred on October 24, 1953 at page 763 of the transcript:

"Miss Martin: Your Honor, I would like to repeat what I said, which was that he was to account for what he got and what he did with it and he has accounted for the fact that $7,300,000 came by reason of his execution of a note.

"The Court: That would be the end of the accounting if he just said, well, I got $500,000 and I threw it down the rat-hole? Nobody could say anything about it?

"Mr. Silverman: I don't think anyone could.

"The Court: You do not think anyone could?

"Mr. Silverman: No, sir".

An independent examination of the regulations which time did not permit during the course of the argument, discloses however, that there is an administrative procedure for the hearing of the accounting of a conservator before the Board. It is contained in Title 24 C.F.R. § 149.9(b) [formerly 417.9 and prior to that 207.9]. The full text of 24 C.F.R. 149.9 reads as follows:

"§ 147.9 *Final discharge and release of conservator*—(a) Final report. At such time as the conservator be relieved of his duties the conservator shall file with the Home Loan Bank Board a detailed report in form satisfactory to the Home Loan Bank Board.

"(b) *Final discharge.* Unless otherwise directed by the Home Loan Bank Board, upon the completion of the duties of the conservator or at such time as the conservator shall be otherwise relieved of his duties, an examination and audit may be directed by the Home Loan Bank Board in connection with the report of the conservator hereinbefore required. The *accounts of the conservator shall be approved or disapproved, and, if approved, the conservator shall thereupon be given a complete and final discharge and release.*" (Italics supplied).

The matter of the accounting has presented many considerable problems. The text of order No. 388 does not *terminate* the conservatorship or discharge him (24 C.F.R. § 146.4) but *rescinds* Order 5254, which appointed the conservator, and directed the conservator to make a full and complete accounting to said shareholders for all assets and liabilities of any and every nature pertaining to said Association, and a copy of said accounting to be filed with the District Court of the United States in and for the Southern District of California; and, the conservator was directed by Order No. 388 to make available for inspection all records and books of the Association to counsel for the shareholders' committee or an agent of the shareholders' Association, or to a representative of the District Court of the United States in and for the Southern District of California, and further directed that a certified copy of that resolution should be forthwith delivered to the above named court and filed in the above numbered actions 5421 and 5678. It was upon that order, where the United States Attorney, as well as a Mr. McKenna, one of the attorneys for the Home Loan Bank Board, appeared and consented to the making of the order by this court on January 23, 1948, for turn-back and the appointment of the Master and accounting. Not only did they consent but joined in the request and suggested names of persons. It was at the court's suggestion that Mr. Walker, then Assistant United States Attorney who had been handling the litigation, was appointed because of his familiarity with the whole case. No point has ever been made to this court by the official defendants or the Home Loan Bank Board that an administrative hearing was required on the accounting of the conservator before any legal action could be filed. In fact, it was upon the suggestion of the court that the Attorney General's Office secured the services of accountants from the F.B.I. to complete the accounting which the conservator had filed but which obviously was not a complete accounting.

Again I must advert to the fact that the mandate being specific as to the vacation of certain orders, did not include any orders directing the vacation of the order either for the return of the Association or for the accounting of the conservator. Doubtless the appellate court was influenced in this connection by the statements hereinbefore adverted to on pages 34 and 35 of the brief of the Home Loan Bank Board in 12511 to the effect that the order of this court of January 23, 1948 was final

and that the propriety thereof was no longer open for consideration, although it might be regarded from the footnote No. 4 on page 35 of that brief that the contention was made that the accounting was a separate controversy. Furthermore, the court was no doubt influenced in this connection by the allegation by the official defendants speaking as the Home Loan Bank Board and as the Federal Savings and Loan Insurance Corporation in the pleadings heretofore adverted to, to the effect that the order of this court of July 23, 1948 restoring the Association to its officers in accordance with the Home Loan Bank Board Order 388 was final. In any event, had the appellate court intended such order as proposed by the appellants in their proposed order No. 11, it could, and would have been as specific with relation to it as it was to the orders included in its mandate. In any event, the way is now open for the Home Loan Bank Board to have an administrative hearing on the accounting of the conservator which from the opinion of the appellate court in 12511 will be judicially reviewable at the conclusion of such administrative hearing by some court. And while the appellate court did not indicate that this court would or would not have jurisdiction of such a judicial review, and it is not necessary at this time for this court to make such a determination until, and if, the question comes before it in an orderly manner after the administrative hearing, it nevertheless seems to me that it is in compliance with the opinion of the appellate court and the terms of the mandate and in accordance with right and justice that the turn-back order of January 23, 1948, and the various orders concerning the accounting, all of which were incidental and subsequent to the turn-back orders, should not now be vacated. Furthermore, I deem it inappropriate that the Master should proceed with further hearings on the accounting until at least after the conclusion of the administrative hearings thereon and on Order 2015. In the event any action is required or desired in the meanwhile, any party may by appropriate motion bring the matter on for hearing. No one can be harmed in the meanwhile by such procedure, and whatever rights, if any, of anybody can thus be preserved.

### Proposed Order No. 12, re Discovery.

Order No. 12 as proposed by the appellants directs the vacating of the order of discovery and inspection, but what has heretofore been said in connection with the dismissal of 5678 and the final report of the Master, disposes of that proposed order and in my judgment it should not now be made for the reasons hereinabove indicated.

### Proposed Order No. 13, re Bellflower Interpleader.

Order No. 13 proposed by the appellants is an order denying the petition and supplement thereto to interplead or deposit in court disputed stock subscription of First Federal Savings and Loan Association of Bellflower, California. I do not think that such an order is appropriate on the mandate but that the question should be raised by the appropriate motions to dismiss and Order No. 13 as proposed by the appellants will be declined at this time.

### Proposed Order No. 6 re Return of Security to San Francisco Bank.

That leaves for disposition order No. 6 as proposed by the appellants, which is asserted by them to be in compliance with paragraph 3 of the mandate. The consideration and disposition thereof has been reserved until the last of the 14 proposed orders for the reason that it, more than the others, involves issues and things which are, or are asserted to be, involved in the many motions made in case No. 13979.

Before considering the contentions of the parties with relation thereto, it will be necessary, as briefly as possible, to advert to other facts and proceedings heretofore had. The conservator went

into possession of the Long Beach Association on May 20th, 1946. He released possession on January 24, 1948 pursuant to the orders heretofore mentioned of the Home Loan Bank Board No. 388 and of this court of January 23, 1948. During the time the conservator was in possession he secured from the San Francisco Bank in the neighborhood of $7,000,000, executed promissory notes therefor to the San Francisco Bank, and placed with the San Francisco Bank as security on said notes, U. S. government bonds in the face value of $5,300,000 and several million dollars face value of individual-borrowers' notes and deeds of trust securing the same, which notes and deeds of trust had been executed by persons borrowing money from the Long Beach Federal Savings and Loan Association. So that at the time of the order of March 13, 1948, hereinafter referred to, there were in existence notes executed by the conservator in favor of the San Francisco Bank as payee in the face principal amount of $6,300,000. These notes are the subject matter of action 13979 and will hereinafter be referred to merely for convenience sake and for purposes of identification only as the "conservator's notes". There was in the possession of the San Francisco Bank as of the date of the turn-over order of March 13, 1948 claimed by it to be held as security for the payment of the conservator's notes, U. S. government bonds in the face amount of $5,300,000 with attached coupons for accrued and accruing interest thereon, individual borrowers' notes totaling several million dollars, payable to the Long Beach Federal Savings and Loan Association, secured by deeds of trust endorsed by the conservator to the San Francisco Bank in the face amount of several millions of dollars. For convenience sake and for purposes of identification only and to distinguish them from the conservator's notes, these notes and trust deeds securing the same will be referred to in this Memorandum as the "individual borrowers' notes". There were several thousand of these individual borrowers' notes and each of them are listed and identified in the order of March 13, 1948 by giving the loan number, the original amount, the date of execution, the trustor (that is, the borrower), the trustee (holding legal title to the property) and the recording data. The list can be found in the printed transcript of record on appeal in 12511 at pages 8423 to 8518 inclusive.

In addition to the foregoing the Long Beach Association held stock in the San Francisco Bank issued to the Long Beach Federal Savings and Loan Association in the face value of several hundred thousand dollars. By statute this stock is security for any indebtedness of the Long Beach Association to the San Francisco Bank. There had previously been brought into court a sum in excess of one and one-half million dollars by approximately 51 individual interpleader-intervention proceedings wherein, in each of them, the individual borrower from Long Beach Federal Savings and Loan Association desired to pay the balance of his notes in full and secure reconveyance of his property, the legal title of which was held by a trustee as security. Four hundred and eighty parcels of land were involved in these individual interpleader interventions and the complete list of them may be found in footnote 15, 14 F.R.D. 273, at page 306.

The Home Investment Co. was one of the individual borrowers filing such an interpleader-intervention proceeding in which was involved 174 separate parcels of land and the total amount deposited by the Home Investment Co. in that interpleader-intervention was in excess of $700,000. (The Home Investment Co. is one of the movants for summary judgment in 13979).

On March 13, 1948 the court made its order directing that the conservator's notes, together with all collateral, including the stock in the San Francisco Bank held by the San Francisco Bank as security or claimed security therefor, which collateral is above described, be

deposited in this court. And, on March 26, 1948, after hearing, this court made an order directing that the individual borrowers' notes and trust deeds thereon be returned to the Long Beach Association and that whatever lien thereon which might exist in favor of the San Francisco Bank would be transferred to the government bonds, their coupons and the money theretofore deposited in court as a result of the 51 interpleader-interventions above mentioned.

The interlocking of the matters which must be given consideration in connection with compliance with Paragraph 3 of the mandate and with the matters and things involved in case No. 13979, arises principally because of two things, which may be more or less summarily stated as follows: (1) the contention of the Long Beach Association that this court can, in compliance with the mandate, and must under applicable law, retain the money and securities referred to in Paragraph 3 of the mandate and now on deposit in 5421, in the registry of the court, but transfer the same to action 13979, for the reason that Long Beach Association has filed an answer to the complaint of the San Francisco Bank in 13979, denying the indebtedness, and the validity of the notes, and asserting affirmative relief and stating in its answer and cross-claim that it re-interpleads into court in action 13979 all of the bonds, securities and money now on deposit in the registry of the court in 5421 and belonging to Long Beach Federal Savings and Loan Association; and, (2), the allegation contained in the complaint of the San Francisco Bank in paragraph VIII of its Fifth Cause of Action to the effect that all of the United States Government bonds, and all the individual borrowers' notes and deeds of trust on real property securing the same were assigned, delivered and pledged to the San Francisco Bank as security for the notes now in the principal sum of $6,-300,000, which are the subject matter of action 13979 and "that by reason of said assignments and pledges said plaintiff (i. e., the San Francisco Bank) be-

came, ever since has been, *and still is,* the owner and holder of a lien upon all said pledged and assigned property"; and the further allegation contained in paragraph 15 of the complaint of the San Francisco Bank in its Fifth Cause of Action to the effect that Long Beach Association is estopped from denying that plaintiff *"is the holder of a lien upon all of the personal property pledged to plaintiff, or any substituted collateral."*

The complaint of the San Francisco Bank in No. 13979 thus appears to be a complaint to foreclose a lien upon the United States Bonds and all of the individual borrowers' notes and trust deeds securing them (about 6,000 separate trust deeds and notes) which were ordered deposited in court by this court's order of March 13, 1948 and which were thereafter, by an order of this court on the 26th day of March, 1948, delivered to the Long Beach Association. After the return to the Association of the individual borrowers' notes and trust deeds, the Association continued to accept payments thereon, and according to documents on file about 1700 of them have been paid in full and title re-conveyed.

Under the order of March 13, 1948 directing the deposit of collateral in court there was deposited in this court U. S. Government bonds of the face value of $5,300,000 belonging to the Long Beach Association and several thousand borrowers' notes, the payee of each of which was the Long Beach Federal Savings and Loan Association, with the trust deeds securing each of them, transferring the legal title to the property covered to a third party as trustee. All these had been transferred by Ammann as conservator to the San Francisco Bank as security for loans made to Ammann while conservator of the Long Beach Association. Whether the allegations above mentioned contained in the complaint of the San Francisco Bank in 13979 precipitated them or not, the fact nevertheless remains that Home Investment Co. which, as owner of 174 sepa-

rate parcels of property, had interpleaded cash in excess of $700,000 in action 5421 due on notes secured by trust deeds on the 174 parcels of property, and the Title Service Co., holder of the legal title as trustee under deeds of trust securing many of the notes involved in 50 other interpleaders similar to Home Investment Co., and holding the legal title as Trustee to several thousand other parcels of property deposited in court, joined in a cross-complaint in interpleader in 13979 as did also the Long Beach Federal Savings and Loan Association. All of them, that is to say, Home Investment Co., Title Service Company and Long Beach Federal Savings and Loan Association, have filed a motion in 13979 which was heard beginning October 12th along with all of the other motions, for a summary judgment quieting title to all of the property covered by such trust deeds and to such trust deeds and notes executed by individual borrowers from Long Beach Association as against the San Francisco Bank, and as against other persons named as cross-defendants in the various cross-claims filed in action 13979.

By the order of March 26, 1948, returning the trust deeds and notes to Long Beach and transferring to the cash and bonds in court whatever lien existed in favor of the San Francisco Bank on the conservator's notes which are now the subject of suit No. 13979, the court, instead of attempting to judicially run the business of the Long Beach Association, turned over to it the matter of collection and servicing of the several thousand notes and trust deeds, but preserved, or attempted to preserve the rights of the litigants for ultimate judicial determination.

Paragraph No. 3 of the mandate requires two things: (1) that the order of March 13, 1948 requiring the deposit in court of the conservator's notes, the government bonds and trust deeds with their accompanying individual borrowers' notes, be dissolved, set aside, and vacated, and, (2) the return to the Federal Home Loan Bank of San Francisco of the conservator's notes principal aggregate face amount of $6,300,000, together with the substituted collateral made under the order of March 26, 1948.

If an order is made in compliance with the first provision of paragraph 3 of the mandate directing the vacation of the order for deposit in court of March 13, 1948, then by such vacation the status quo ante will automatically be restored. That is to say, whatever rights the San Francisco Bank had (and it is not disputed that they had possession of the individual borrowers' notes and trust deeds securing same), would be restored as of the time of making the order of March 13, 1948. And the San Francisco Bank, by the pleadings above quoted is insisting upon its rights to foreclose on such trust deeds and individual borrowers' notes even though, as counsel all admit, many of them have been paid off.

As heretofore indicated, it is shown in many pleadings and not denied, that each of the individual borrowers' notes and trust deeds on the several thousand parcels of property owed by debtors to the Long Beach Association were transferred and assigned by the conservator to the San Francisco Bank and were in its possession. The presumption is that the conservator had the authority to make such assignments and that such assignments were legal and valid. On the hearing on the motions for summary judgments in 13979 approximately 1700 trust deeds and their accompanying notes which had been deposited in court by the San Francisco Bank pursuant to the order of March 13, 1948, had been paid off in full and were produced in court. The re-transfer of said notes and trust deeds from the San Francisco Bank to the Long Beach Federal Savings and Loan Association on each document recited that the transfer was made *pursuant to court order.* If, therefore, the court order is vacated, dissolved and set aside without some disposition of the questions concerning the several thousand trust deeds and notes, a question arises as to the legality and efficacy of

the transfer of the notes and trust deeds made by the San Francisco Bank to Long Beach Association under the order of March 26, 1953.

The resulting situation is not a mere chimera, or a figment of the imagination, or a false or spurious issue, but presents a very real problem insofar as the trustees under said paid-off deeds of trust are concerned, and insofar as the payees on those individual borrowers' notes are concerned. The same problems are present insofar as each of the several thousand individual-borrower notes and trust deeds, which are not yet paid off, are concerned. The problem could very easily have been solved: and the suggestion was made repeatedly by this court to counsel, that if, as the San Francisco Bank stated in its brief to the Supreme Court on petitions for rehearing, and as counsel for the Bank stated in court in these proceedings and on previous ones, it actually claimed no right to have recourse against either the trustees under said trust deeds or the individual-borrowers, it could amend its complaint in 13979 or consent to a motion for a summary judgment, or file a disclaimer or other appropriate document, quitclaiming or otherwise indicating a disclaimer to any such right. A statement was made to that effect by counsel for the San Francisco Bank in the hearings before this court on the motions to spread the mandate covering the period May 25, June 22, June 24, and August 3, 1953. But upon argument in the appellate court on the appeals involving the Master's fees and the appointment of a Receiver, Mr. Angell, counsel for the San Francisco Bank, on August 6, 1953, stated: "It is the position of the San Francisco Bank that they are entitled to have full security for their $6,300,000 plus all interest due thereon *exactly as they had it at the time the money and bonds and deeds of trust were taken from the possession of the San Francisco Bank and placed in the registry of the court.*" which appeared to me to be at variance with statements made by Mr. Angell to this court previously.

Accordingly, on October 12th, at the commencement of the arguments on the various motions, I called attention to Mr. Angell's statement in the appellate court and its apparent discrepancy with statements previously made to this court, whereupon the following occurred: (Tr. p. 15).

"Mr. Chapman: That being one of the issues in this case for Long Beach Federal at least, we seek to enforce the decree that you made cancelling the endorsement of all these notes and quieting our titles as beneficiaries under the trust deeds and Title Service—speaking for Mr. Sutter who is absent—seeks to quiet its titles as trustee under the trust deeds.

"In other words, for five years we relied on orders that you made as a result of which some $14,000,000 in bonds and money and notes, trust deeds, were deposited here. No appeal was ever taken from those orders. On an appeal from a previous injunction several years later the Court of Appeals makes some opinions and San Francisco Bank had its foreclosure complaint with declaratory relief count, or whatever you call that last count.

"The Court: What I am getting at is this, the statement was made here by Mr. Angell and by Mr. Hoffmann, and I think also by Mr. Dusenbery, on various or several occasions to the effect that the San Francisco Bank was not looking to any of the trust deeds that went through this court, either in special separate proceedings eventuating in a judgment or order of the court or that came in in the block of trust deeds made pursuant to the order of the court requiring the deposit in court.

"Now if that is the case I think something should be done by the San Francisco Bank to eliminate it rather than to try and bargain with this court that upon making an order which is satisfactory to the San

Francisco Bank they will then execute quit claims.

"Counsel have furnished me, both Mr. Angell and Mr. Chapman, copies of the transcript before the Circuit Court of Appeals. In reading Mr. Angell's statement there, I am not sure but it seems to me to be at variance with the statement which you made here:

"'It is the position of the San Francisco Bank that they are entitled to have full security for their $6,300,000, plus all interest due thereon, exactly as they had it at the time the money and the bonds and the notes and deeds of trust were taken from the possession of the San Francisco Bank and placed in the registry of the court. And when the order was made by the District Judge releasing those notes and deeds of trust which were far in excess of the amount of cash that was put in there, in fact, then we had a right, whenever this was determined—that the court had no jurisdiction—to fasten upon any funds of Long Beach Association in the registry of the court, either that court or this court, had a right to and must fasten upon those funds a lien sufficient to adequately secure the San Francisco Bank.'

"I do not think the last part of your statement is inconsistent with any statement which you have made here, but the previous portion of the statement, that you are entitled to have it exactly as you had it at the time the money and bonds and notes and deeds of trust were taken from the possession of the San Francisco Bank, that appears to me not to be consistent with the disclaimer which you made.

"Now perhaps I misread this statement here or misunderstood you when you made your statement to this court.

"Mr. Angell: Whichever be the situation, your Honor, I intended to say there—and I think I said it—that I was speaking of the amount and was not referring in any way to the notes and the deeds of trust which are referred to here and which were released from the registry of the court. The bond, the deposit of cash, it is quite obvious, I think, taking the whole thing in its context and reading the second with the first, that that exactly means an amount, that our security should not be impaired.

"The Court: Your position is, if I may paraphrase it and if I understand it as you stated it here, that the security you are looking to is solely the security on deposit in this court now.

"Mr. Angell: Quite right, your Honor.

"The Court: And not to anything which has been here and gone.

"Mr. Angell: Our position has never been any different."

However, the position of the San Francisco Bank was further confused by a subsequent contrary statement made by Mr. Angell during the course of the argument on October 21, as follows, (pages 757, 758): "We have filed a very simple action. That is what we conceive the San Francisco Bank rights to be. *We stand on it. * * * We state we stand on our complaint as it is filed* and we further say this court has no jurisdiction."

If the San Francisco Bank stands on its complaint as it is filed, which includes a cause of action to foreclose and reestablish its position as security holder as of the date of the turn-over on March 13, 1948, then there can be no doubt in my mind that the trustees holding legal title to the individual-borrowers' properties under the trust deeds which have been paid off and are now being paid off to the Long Beach Association, as well as the debtors on the individual notes securing those trust deeds, may be confronted with a very serious and complicated situation which might require

extensive and expensive litigation on their part. It is simple logic that if the San Francisco Bank secured the title by assignment from the conservator of the trust deeds and notes, and if the order of March 13, 1948 is vacated, dissolved and set aside, then the San Francisco Bank, having assigned the notes and trust deeds, not outright *but only conditionally, pursuant to the order of March 13, 1948,* will be in a position to claim that all reconveyances made by the trustees holding legal title of the properties under the trust deeds, after March 13, 1948, were void and may look, or attempt to look, to such trustees for satisfaction of any judgment obtained in 13979 for the value of the property as of the time of the turn-over order on March 13, 1948.

Likewise, the San Franscisco Bank may claim that the debtors on the notes securing those trust deeds, in view of the fact that they were claimed to be, (and it must be presumed that they were validly assigned to the San Francisco Bank) had no right to make payments thereon to the Long Beach Federal Savings and Loan Association but should have made payments thereon to the San Francisco Bank notwithstanding an agreement asserted by the San Francisco Bank to exist which was entered into prior to the appointment of the conservator authorizing the Long Beach Association to be its agent in the collection of balances due on notes. This is particularly so because of the confusing and contradictory statements in various pleadings as well as statements of counsel hereinbefore referred to.

It must be remembered in this connection that the San Francisco Bank, by its formal pleadings and by the last authoritative statement of its counsel in court, are asserting that the Order of March 13, 1948 was void and that they stand on their complaint as it is filed which seeks to restore the status quo as to all securities including individual-borrower notes and trust deeds as of March 13, 1948.

The two main contestants in action 13979 are the San Francisco Bank and the Long Beach Association, and the people who would be involved, or whose rights might be endangered by restoring the status quo as of March 13, 1948, are innocent third parties, that is to say, individual property owners who interpleaded in the 51 interpleader-proceedings in the consolidated actions 5421 and 5678, the debtors on the trust deeds and notes, and the trustees under the trust deeds holding legal title.

 It therefore seems to me that in view of the fact that the mandate ordered the dissolution, vacation and setting aside of the order of March 13, 1948, requiring the deposit of the collateral in court, but *did not order the dissolution, vacation or setting aside of the order of March 26, 1948, substituting collateral and directing the return to the Association of the notes and trust deeds securing them, that it was the intention of the appellate court to accept the substitution of collateral and that all questions concerning the borrowers' notes and trust deeds should be eliminated from litigation.* This can be done, by the execution and appropriate filing of disclaimers or quitclaims by San Francisco Bank. The San Francisco Bank having indicated at one time or another its willingness to file a disclaimer, it seems to me that it is incumbent upon this court to provide for the elimination of all of those issues and controversies in the consolidated cases and in 13979 by an appropriate order in connection with carrying out the mandate insofar as paragraph 3 of it is concerned. This can be done by making the order required by the mandate and conditioning it upon the execution of appropriate disclaimers or quitclaims. Such disclaimers or quitclaims should release the individual borrowers on the notes and the Trustees on the notes that have been paid on and those that have been paid off since the order of March 26, 1946, as well as the individual-borrowers for all payments made to Long Beach Association since

March 26, 1946, and should not release or affect in the slightest whatever liability Long Beach Association has to the San Francisco Bank. Thus there will, in my judgment, be *strict compliance with the mandate* and certainly compliance according to right and justice, as it will eliminate all innocent third parties and their properties from the nutcracker between the contesting litigants, San Francisco Bank and Long Beach Federal Savings and Loan Association.

Before considering the contention of the Long Beach Association that it is the duty of this court to transfer all securities and money on deposit in the registry of this court in the consolidated cases to action 13979, it is well to examine the audit and determine how much money there is, and, insofar as necessary to comply with the mandate, also determine to whom it belongs. The audit shows the following as of August 3, 1953.

| | | |
|---|---:|---:|
| Received from individual-borrower interpleader-interventions: | | |
| 1. Principal and interest | 1,631,406.70 | |
| 2. Penalties and impounds | 557.26 | |
| 3. Reconveyance fees to trustees on individual-borrowers' notes | 747.50 | |
| 4. "Federal Housing Administration Bonus" | 8,329.00 | |
| Total cash from individual-borrowers | | 1,641,040.46 |
| Interpleaders, cash, other than trust deed transactions: | | |
| 1. George Turner | 18,503.52 | |
| 2. Bellflower | 38,300.00 | |
| 3. Long Beach Federal Insurance premiums | 123,026.33 | |
| sub-total | 179,829.85 | |
| Total cash interpleaded | | 1,820,870.31 |
| Paid out under order of court as fees, etc., | | 344,945.04 |
| Balance cash in court from interpleaders (not taking into account $50,000 cashiers check interpleaded by Wallis) | | 1,475,925.27 |
| Cash represented by accumulated interest coupons to Aug. 3, 1953 on $5,300,000 government bonds | | 709,633.33 |
| Total cash in Court August 3, 1953 | | 2,185,558.60 |
| U. S. Government coupon bonds | | 5,300,000.00 |
| 6085 shares of stock in San Francisco Bank issued to Long Beach Association at $100 par value per share | | 608,400.00 |
| Total cash, bonds and stock in court (excluding conservator's notes of $6,300,000.00) | | 8,093,958.60 |

The interest coupons which have accumulated since the deposit in court on March 13, 1948 are attached to the bonds and to the date of August 3, 1953, the accumulated interest on the bonds amounted to $709,633.33. The coupons are the equivalent of cash, that is to say, they are cash. Title 12 U.S.C.A. § 1430(a)(4) provides as follows: "If secured by obligations of the United States, or obligations fully guaranteed by the United States, the advance shall not be for an amount in excess of the face value of such obligations."

I am informed and have stated to counsel, who have not challenged it, that it is the practice of the San Francisco Bank as well as other banks of the Home Loan Bank Board system, to accept United States government bonds at their face value as security.

By the terms of 12 U.S.C.A. 1430(c) stock in the Home Loan Bank, issued to a Federal Savings and Loan Association is security for any indebtedness of the association to such bank. The stock certificates were in the possession of the Long Beach Association and were interpleaded by it. I understand from statements of counsel for San Francisco Bank that such practice is customary and it does not desire the possession of such stock certificates as the section of the act creates a statutory lien. This being so, the statutory lien would seem to prevail regardless of the provisions of Section 2988, California Civil Code that the lien of a pledge is dependent on possession. Therefore, the $608,400 worth of stock held by Long Beach Association in the San Francisco Bank is additional security on whatever indebtedness exists on the conservator's notes of $6,300,000, although in the formal order on this memorandum the stock certificates will be ordered returned to the Long Beach Association in keeping with the above mentioned practice.

Thus I regard the coupons as cash and the bonds as of their face value insofar as being acceptable as security by the San Francisco Bank.

The mandate directs the return of government bonds, interest coupons and cash to make the combined total of $6,324,098.35 with interest on $6,300,000 at 2% per annum from the 10th day of March, 1948, until the date of such release.

Tabulated as of August 3, 1953, the aggregate total to be returned under paragraph 3 of the mandate to San Francisco Bank is as follows:

| | | |
|---|---:|---:|
| Specific figure set forth in mandate | | 6,324,098.35 |
| Interest at 2% from March 10, 1948 to and including August 3, 1953 | | 680,399.99 |
| Aggregate total to be returned under paragraph 3 of the mandate | | 7,004,498.34 |

which figure is made up as follows:

| | | |
|---|---:|---:|
| U. S. Government bonds | | 5,300,000.00 |
| Accumulated interest coupons thereon to August 3, 1953 | 709,633.33 | |
| Cash from the registry of the court | 994,865.01 | |
| Total cash | 1,704,498.34 | |
| | | 7,004,498.34 |
| Stock held by Long Beach in San Francisco Bank | | 608,400.00 |
| Total security of San Francisco Bank | | 7,613,898.34 |
| Face value of Conservator's notes | | 6,300,000.00 |
| Excess of security over face of notes | | 1,312,898.34 |
| less accrued interest to Aug. 3, 1953 | | 704,498.34 |
| Excess of security over principal and interest | | 608,400.00 |

The interest on the government bonds equals the interest due and accumulated on the $6,300,000 notes except for the sum of *14 cents* per day which difference I do not think is sufficient to affect the outcome of this litigation, particularly in view of the fact that as security therefor, and for attorneys' fees and costs in 13979, the San Francisco Bank will have cash and its own stock, in excess of the face of the conservator's notes. It appears that the stock held by Long Beach in the San Francisco Bank has earned dividends which have not been paid to Long Beach and that the total thereof is about $50,000, which is still in possession of the San Francisco Bank. That sum is not taken into consideration in the above figures.

The bonds of $5,300,000 and their interest coupons are the property of the Long Beach Association subject to whatever lien rights may exist in favor of the San Francisco Bank. Approximately $188,906.35 of the cash on deposit is involved in the Bellflower interpleader, the Turner interpleader, the Insurance Premiums interpleader, the F.H.A. bonuses and reconveyance fees to Title Service. It is undisputed that the balance of cash and property in the registry, is the property of the Long Beach Association subject to whatever lien rights may exist in favor of the San Francisco Bank.

I shall not, in this memorandum, attempt to make disposition of these items concerned in the Bellflower, Turner and Insurance Premiums interpleaders or the F.H.A. bonus and Title Service fees at this time but will leave them for appropriate motion on notice.

From the foregoing it is seen that there is ample substituted security on deposit in court to take care of all claims and demands which may arise in connection with, or upon the complaint of the San Francisco Bank, upon the $6,300,000 notes, in case 13979 without having recourse to or involving the borrowers' notes and trust deeds in this litigation.

The foregoing is additional support for the position that the mandate and right and justice require that the third persons involved in connection with the claims of the clouded titles should be relieved from all further possible litigation in connection with these matters by the order suggested hereinbefore.

I come now to the contention of the Long Beach Association that it is the duty of this court, in compliance with the mandate, to transfer such substituted security to the registry of the court in action 13979.

The contentions of the Long Beach Association are made in case 5421 by way of objections of Long Beach to the form and substance of proposed order No. 6. No separate *motion* was made or is pending in either 5421 or 13979 to make such deposit in 13979; but the matter is raised in 13979 by way of allegations in answer and cross-complaint.

The propositions upon which such contention rests may be very roughly stated to be as follows: suit No. 13979 by the San Francisco Bank, upon its notes and to foreclose its liens and pledges, was filed after the appeal in both 12511 and 12591, as well as a cross-claim by the San Francisco Bank for the same relief in consolidated actions 5421 and 5678; under the authorities such event is a change in circumstances occurring after the appeals, which requires this court to exercise its discretion and judgment independent of the mandate, and that this is particularly so in view of the fact that by the provisions of Section 1652 of Title 28 U. S. Code, the laws of the several states except where the Constitution, treaties or Acts of Congress otherwise require, or provide, shall be regarded as rules of decision in civil actions in the courts of the United States in cases where they apply; that by the California Code of Civil Procedure, Section 726, "There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property which action must be in accordance with the provisions of this chapter"; and Section 572 of the California Code of Civil Procedure permits the deposit in court under certain conditions and by Section 3011 of the Civil Code of California, when a pledgee files a suit for foreclosure, instead of selling pledged property at private sale, he may foreclose by judicial sale.

It is further contended by the Long Beach Association that the San Francisco Bank, having elected to file the foreclosure suit is limited to a judicial sale, and the property should be in the custody of the court by being in its registry in order to effectuate such judicial sale and to prevent the San Francisco Bank which has its headquarters in San Francisco outside of the territorial jurisdiction of this court, from exercising the right of sale under the pledge regardless of the foreclosure action, and further, that such deposit in court would prevent the San Francisco Bank from transferring the collateral and the cash outside of the State of California or from applying the cash turned over to it as payments on the note, the validity of which is contested by the Long Beach Association in action 13979.

It is further contended by the Long Beach Association that by turning the conservator's notes and property over to the San Francisco Bank this court is in effect making a judgment on the merits in 13979, and that neither of the opinions of the appellate court nor the mandate are to that effect, and any construction of them to that effect is to hold that the appellate court had power which it did not possess to make a final judgment on the merits in a case not before them, viz., 13979.

Both parties have cited authorities in connection with their contentions. Upon examination of those authorities it appears to me that they support the contentions advocated by the Long Beach Association except the last above-stated. Reference is particularly made to Lord v. Garland, 27 Cal.2d 840, 168 P.2d 5; Lord v. Superior Court, 27 Cal.2d 855, 168 P.2d 14; Lord v. Ingels, 64 Cal.App. 2d 559, 149 P.2d 72; Baumann v. Bedford, 18 Cal.2d 366, 115 P.2d 437; Metropolitan Finance Corp. v. Wood, 9 Cir., 175 F.2d 209; Clarke v. Chicago, B. & Q. R. Co., 10 Cir., 91 F.2d 561; Doyne v. Saettele, 8 Cir., 112 F.2d 155; Louisville Trust Co. v. Knott, 6 Cir., 130 F. 820; McKinney v. Landon, 8 Cir., 209 F. 300, and to sections of the California Civil Code and California Code of Civil Procedure heretofore mentioned.

The difficulty with applying the principles of those cases to the situation at hand lies in the fact that the appellate court at the time of filing its opinion in 12511 on April 2, 1952 and in 12591 on November 6, 1952 and the making of the mandate on May 21, 1953, was not unaware of action 13979.

The appellate court, prior to any of said dates, had, on March 25, 1952, on motion of the San Francisco Bank and the official defendants, modified this court's injunction order of December 2,

1949, so as to permit the San Francisco Bank to file an action in the state court on the conservator's notes. As a condition thereof it required full and complete copies of the four conservator's notes to be attached to any complaint thereon. The appellate court further modified that injunction so as to permit the Long Beach Association to appear in, answer, defend, and participate in such actions. Such an action was filed by the San Francisco Bank in Los Angeles County on the 27th day of March, 1952, and on April 3, 1952 was removed to this court where it has since pended as action No. 13979 (a motion to remand said action to the State court was denied May 29, 1953). Action 13979 and its subject matter were again before the appellate court by motion of the San Francisco Bank to stay all proceedings in 5421 and 5678 in November, 1952, and on November 13, 1952, after hearing, the appellate court, issued an order staying all proceedings in actions 5421 and 5678 until the final disposition of the appeal then pending on the injunction appeal in 12511 and on the attorneys' fee appeal in 12591 *"except that said District Court is hereby permitted to entertain and determine the cause designated as 13979 filed in said district court."*

While, of course, all of the answers and cross-claims which have been filed in 13979 by the Long Beach Association and by the Mallonee group of shareholders denying any liability on the notes and attacking their validity, were not before the appellate court at the time of making the mandate, nevertheless it is completely unrealistic to suspect that the appellate court, in view of the vigorous contentions which were before them in appeals 12511 and 12591 concerning the validity of the notes and the actions of the conservator, would indulge the presumption that action 13979 on the conservator's notes for $6,300,000 would result in a default of Long Beach Association and not be contested. If the appellate court had not acted in connection with the stay and had not permitted the prosecution of action 13979 and thus had

indicated no knowledge of the existence of that action, then I feel that I would be obliged to consider it as a change of circumstance which would compel me in spite of the mandate to make an order in action 5421 to retain the money and bonds in the registry of the court, and transfer them to action 13979 pending the final disposition of that action.

It is clear that the appellate court, with the knowledge of that action and contentions of the parties, nevertheless made the provisions of its mandate specific. I may say in passing that I can see no reason why the cash on deposit in court should not be converted into U. S. government bonds, but no formal motion has been made to that effect, although Long Beach Association indicated they desired to do so. In that connection, the parties could not have made such a motion pending the coming down of the mandate but such motion could have been made during pendency of the appeals and prior to the issuance of the stay.

The Long Beach Association expresses some concern that upon the bonds and cash being turned over to the San Francisco Bank that the San Francisco Bank may attempt to sell the bonds under the terms of the notes or apply the cash on account of the note and thus defeat the contentions of the Long Beach Association made in action 13979 concerning the validity of the notes and their liability thereon and prevent a trial on the merits.

The San Francisco Bank is a public corporation; its officials are either public or quasi-public officials. The San Francisco Bank has filed its action 13979 in which it seeks to establish the validity of the notes as a charge against Long Beach Association and the foreclosure of the bonds and cash held by it as security. While the counsel for the Long Beach Association may feel justified in his fears concerning such actions to be taken by the San Francisco Bank, this court must nevertheless assume that the San Francisco Bank is acting in good faith. If the officials of the San Fran-

cisco Bank do sell the bonds and apply the cash on payment of the notes, as they have repeatedly disclaimed any intention of doing in this court, a question would, of course, arise as to whether or not the contempt processes of this court would be applicable against such officers or employees in action 13979, if not in the within action, or in the appellate court in violation of its mandate, as clearly the appellate court did not intend to pass upon the merits of the issues involved in case 13979 as indeed it could not.

The conclusions herein reached do not result in a decision on the merits in 13979. The bonds and cash are to be held only as security by the San Francisco Bank and the order will so provide, as I deem the mandate to require such provision. Furthermore, such order in 5421 will be without prejudice to any motion any party may desire to make in 13979 with relation to the custody of such security.

The motions in action 13979 are not herein decided but will require further study. They will be reached as soon as possible. A copy of this memorandum will be filed in action No. 13979.

Formal orders will be prepared and signed by the court at its earliest convenience to carry out the foregoing.

While the above memorandum was in the course of typing, a copy of the opinion of the appellate court in the appeals on the receivership and Special Master's fees was received. It, of course, is not final as neither the time for rehearing or certiorari has expired. In the meanwhile I shall make the orders as indicated herein, and upon receipt of the mandate hear any motions which any party may desire to present which they deem requires a different result from that herein indicated.

The above memorandum prepared for filing today, November 30, 1953, and just as its typing is concluded this morning, there was handed to me what appears to be a copy of a disclaimer by the San Francisco Bank, which is stated to have been recorded at 8:45 a. m. this morning. I assume that the original will be filed in action 5421 or 13979 after it is returned from the Recorder. It is on its face a disclaimer to the real property involved in all trust deeds deposited in court in action 5421–5678. I shall examine it and if it meets the requirements of the mandate as construed by the above memorandum, I shall promptly make the order for the return of the collateral.