See also 122 F.Supp. 401.

**MALLONEE et al.**

**v.**

**FAHEY et al.**

**FEDERAL HOME LOAN BANK OF LOS ANGELES**

**v.**

**FEDERAL HOME LOAN BANK OF SAN FRANCISCO.**

Civ. Nos. 5421, 5678.

United States District Court,
S. D., California, C. D.

June 10, 1954.

Sylvester Hoffman, Los Angeles, Cal., Philip H. Angell, San Francisco, Cal., Verne Dusenbery, Portland, Or., for Federal Home Loan Bank of San Francisco and others.

F. Henry NeCasek, Long Beach, Cal., for Roy E. Hegg and George Turner.

474

O'Melveny & Myers and Richard Fitzpatrick, Los Angeles, Cal., for Federal Home Loan Bank of Los Angeles; Coast Federal Savings & Loan Ass'n and others.

W. I. Gilbert, Jr., Los Angeles, Cal., for Receiver Ernest Utley and for First Federal Savings & Loan Ass'n of Wilmington.

James E. Burns, Charles Dal Sooy and Alden Ames, San Francisco, Cal., for Pioneer Investors Savings & Loan Ass'n and others.

Linnell & Smith, Long Beach, Cal., for Harold Lee Newendorp and Charles E. Bradley.

Robert A. Moffitt, Los Angeles, Cal., for Land Title Ins. Co.

Thomas F. Menzies and Harold L. Watt, Los Angeles, Cal., for Home Indemnity Co.

Lyman B. Sutter, Long Beach, Cal., for Title Service Co.

Raymond Tremaine, Los Angeles, Cal., for Robert H. Wallis.

Charles K. Chapman, Long Beach, Cal., for Long Beach Federal Savings & Loan Ass'n.

Westover & Smith, Los Angeles, Cal., for Mallonee and others.

Frank G. Makepeace, Long Beach, Cal., for intervenor, Lillian A. Coggswell.

Crail & Crail, Los Angeles, Cal., for Joe Crail.

Roger W. Powers and Paul L. Zimmerman, Los Angeles, Cal., for Charles Taylor.

Shafer & Seymour, Compton, Cal., for Fred G. Hunter and Melba N. Hunter.

Austin, Austin & Jones, Compton, Cal., for Wayne H. Sones and Helen M. Sones.

Kelsey Petterson, Los Angeles, Cal., for M. E. Spice.

Bates S. Himes, Beverly Hills, Cal., for C. C. Connor, dba Surety Finance & Adjustment Co.

Emmett E. Doherty, Los Angeles, Cal., for plaintiff in intervention, John D. Willhoit.

Ronald Walker, Los Angeles, Cal., Special Master.

HALL, District Judge.

Following the filing of the memorandum of November 30, 1953, 117 F.Supp. 259, the Special Master prepared and filed two reports; one, on the handling as Master of the turn-over proceedings of the Association under the order of January 23, 1948, text at 14 F.R.D. 273, 315, and matters incident thereto and resulting therefrom, such as the accounting of the conservator, the election of officers and the like; and the other, on the handling of the reference to him as Master in the discovery proceedings.

The Master has, in connection with the two reports, filed a request for final allowance for fees and allocation of the same as costs against the parties.

Three appeals were taken from four orders made in 5421–5678 for partial interim allowance of fees to the Special Master on account, directing their payment from money on deposit in court. These appeals were numbered 12575, 15893 and 13055 in the appellate court. They involve the following orders: March 9, 1950—$15,000; November 9, 1950—$10,000; February 20, 1951—$1,-000; April 26, 1951—$3,000.

The order of February 20, 1951 also contained an order to reimburse the Special Master for $310, expenses incurred by him in connection with his duties.

On November 23, 1953, the Court of Appeals handed down its decision, Fahey v. Calverley, 9 Cir., 208 F.2d 197, providing for the reversal of said orders and their vacation. Certiorari was applied for and was denied by the Supreme Court April 26, 1954. Mallonee, Bucklin, and Fergus v. Fahey, 74 S.Ct. 680. The mandates on said appeals were received in this court on May 5, 1954. Upon notice to all parties, after hearing, they were ordered spread and filed on May 24, 1954. Orders in accordance with the mandates have heretofore, and on the 8th day of June 1954, been signed and filed in the above matters.

Each of the mandates in appeals numbers 12575, 12893, and 13055 provided as follows: "On consideration thereof, it is now here ordered and adjudged by this court that the motions to dismiss be, and are hereby, denied, and that the motion to remand be and hereby is granted and that the order of said District Court in this cause allowing fees to Special Master on account be, and is hereby reversed and that this cause be and hereby is remanded to said District Court with directions to vacate said order."

The order and the mandates are substantially the language contained in the opinion of the United States Court of Appeals of November 27, 1953, reported in 208 F.2d 197. Inasmuch as the certiorari was denied, nothing occurred subsequent to the filing of that opinion, to alter the opinions and conclusions therein expressed. Consequently that decision was before this court and all parties to the cause at the time of the hearing of the Special Master's report in January, this year.

Suffice it to say that there are several questions of law to be met at the threshold.

The mandate of the Court of Appeals on the appeals taken in 5421 and 5678, set forth at length in 117 F.Supp. 259, directed the dismissal of certain pleadings in action 5421 "at the cost" of those filing such pleadings and amendments and supplements thereto, and the dismissal of the action 5678, at the "cost of the plaintiffs."

The applicable statute is Section 1919 of Title 28 U. S. Code, reading as follows:

"Whenever any action or suit is dismissed in any district court for want of jurisdiction, such court may order the payment of just costs."

Rule 53(a) of the Federal Rules of Civil Procedure, 28 U.S.C., reads as follows:

"(a) Appointment and Compensation. Each district court with the concurrence of a majority of all the judges thereof may appoint one or more standing masters for its district, and the court in which any action is pending may appoint a special master therein. As used in these rules the word 'master' includes a referee, an auditor, and an examiner. The compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties or paid out of any fund or subject matter of the action, which is in the custody and control of the court as the court may direct. The master shall not retain his report as security for his compensation; but when the party ordered to pay the compensation allowed by the court does not pay it after notice and within the time prescribed by the court, the master is entitled to a writ of execution against the delinquent party."

Rule 54(d) of the Federal Rules of Civil Procedure reads as follows in its applicable portion:

"(d) Costs. Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; * * *."

The first question is whether or not master's fees are "costs." This question is effectively settled in the affirmative by Dyker Bldg. Co. to Use of Parreco v. United States, 86 U.S.App.D.C. 297, 182 F.2d 85, at page 89, where the court flatly stated: "Costs of reference properly may be considered as costs within the meaning of Rule 54(d). Expenses of this character were so considered in Ex parte Peterson, 1919, 253 U.S. 300, 318, 319, 40 S.Ct. 543, 549, 64 L.Ed. 919 cited by the use plaintiffs."

The next question is whether or not this court has jurisdiction to allow costs where the appellate court has held there is no jurisdiction of the subject matter.

That question is answered in the affirmative by In re Northern Indiana Oil

Co. (Moore v. Fletcher), 7 Cir., 1951, 192 F.2d 139. There the court held that Section 1919 of Title 28 U. S. Code meant exactly what it says, that whenever any action or suit is dismissed in any District Court for want of jurisdiction, such court may order the payment of costs. The appellate court had previously reversed an order of the District Court on the ground of lack of jurisdiction. Thereafter, the District Court, after entering the order in compliance with the mandate, upon hearing, taxed costs. The order taxing costs was affirmed.

In Noxon Chemical Products Co. v. Leckie, 3 Cir., 1930, 39 F.2d 318, 321, certiorari denied, Robb v. Noxon Chemical Products Co., 282 U.S. 841, 51 S.Ct. 22, 75 L.Ed. 747, the appellate court, after stating that the compensation to which the Master and the receiver in that case might be entitled, " * * * must be taxed against the plaintiff, whose proceeding it was, and upon whom the blame for the wrong committed must legally rest", provided that "the bill should be dismissed *at the cost of* the plaintiff", which is the language used in the mandates from the appellate court in the appeals in 5421–5678 set forth in full in 117 F.Supp. 259, at page 265.

It must necessarily be concluded from the principles announced in the foregoing cases that this court now has the power to fix the fees of the Special Master and to assess them as costs against cross-complainants and third-party complainants in 5421, and the plaintiffs in 5678.

The mandate directed that this court dismiss civil action 5678 at the cost of the Plaintiffs, and, dismiss the following pleadings in civil action 5421–PH:

(a) The complaint of Mallonee, Bucklin and Fergus, and all amendments and supplements thereto, at the cost of said complainants;

(b) The cross-claim and third party complaint of Long Beach Federal Savings and Loan Association, and all amendments and supplements thereto, at the cost of third party complainant and cross-claimant;

(c) The cross-claim of Federal Home Loan Bank of Los Angeles, and all amendments and supplements thereto at the cost of said cross-claimant;

(d) The cross-claim in interpleader of Title Service Company, and all amendments and supplements thereto, at the cost of said cross-claimant;

(e) The cross-claim in interpleader, and all amendments and supplements thereto, of Robert H. Wallis, at the cost of said cross-claimant; "

■ Mallonee, Bucklin and Fergus were a shareholders committee representing themselves and all other shareholders of Long Beach Association as a class. Their standing in court was only as the alter ego of Long Beach Association. They sought in all of their pleadings, the identical relief sought by Long Beach, and on the identical grounds. Their interest and the interest of the class of shareholders and depositors which they represented was identical with that of Long Beach Association. Any allowance of fees and expenses to the Special Master, and assessment thereof as costs, should not be made against Mallonee, Bucklin and Fergus.

■ The claim of Robert H. Wallis was a claim in the nature of interpleader concerning a $50,000 cashier's check. From his pleadings I do not see how he could have had any interest in the services of the Special Master, either in the turn-back proceedings or in the discovery proceedings, and hence any fees allowed to the Special Master as costs should not be assessed against Robert H. Wallis.

■ The cross-claim of Title Service Co. and the various amendments and supplements thereto were in interpleader, or in the nature of interpleader, in connection with the several thousand trust deeds wherein it, as Trustee, held the legal title to property on notes signed by individuals, payable to the Long Beach Association. While by its pleadings it sought much the same relief as that sought by the Long Beach Association and on much the same grounds, it

must be said from all of the pleadings in the case that its primary interest was the protection of the security, that is, the trust deeds and the real property covered by them and the notes upon which the trust deeds were security, and the protection of its rights and duties as trustee, in connection therewith, as between the contentions of Long Beach Association on the one hand, and the conservator and other official defendants and San Francisco Bank and Los Angeles Bank, on the other hand. While its counsel participated in the turn-back proceedings, and, at times, in the discovery proceedings, it cannot be said that the services of the Master in the discovery proceedings were for the benefit of the Title Service Co. or the services of the Master in the turn-back proceedings were for the benefit of the Title Service Co. except as the Master's services facilitated the turn-back and avoided complications and possible future litigation. Thus, any fees for allowance of the Master are not properly assessable as costs against the Title Service Co.

The mandate, 117 F.Supp. 259, is clear that costs are not to be assessed against San Francisco Bank, or any of the other defendants or cross-defendants.

■ The real party in interest seeking the return of the Association in 5421,—and securing it,—is the Long Beach Federal Savings and Loan Association, so that all fees and charges of the Special Master in connection with the turn-back proceeding, are properly assessable and chargeable as costs only to the Long Beach Association.

■ The Long Beach Association, by its cross-claim against San Francisco Bank, Portland Bank and others, and the Los Angeles Bank group by its cross-claim in 5421 and the independent action 5678, sought to secure restoration and reestablishment of the Federal Home Loan Bank of Los Angeles at Los Angeles. Thus, the services of the Special Master in connection with the discovery proceedings are properly assessable against both Long Beach Association and the Los Angeles Bank group. The

discovery proceedings, however, went not only to the claims thus made for the reestablishment of the Los Angeles Home Loan Bank, but also to the claims made by Long Beach Association concerning the invalidity of the seizure and conservatorship, and to the invalidity of the conservator's notes to the San Francisco Bank in the face amount of $6,300,000.

I have heard all of the parties from time to time on the previous reports of the Special Master, and on all of the hundreds of other matters which have been heard in this case; and, neither from them, nor from the testimony adduced at the hearing on the Master's reports in January of this year, is it possible to devise any formula for allocation of the Master's services, between the claims of Long Beach Association of the invalidity of its seizure, the actions of the conservator and the conservator's notes on the one hand, and the claims of Long Beach Association and the Los Angeles Bank group, on the other, for revival and reestablishment of the Federal Home Loan Bank of Los Angeles at Los Angeles.

There simply is no norm or standard which I have been able to produce by study, nor has any been suggested by any of the parties, for such an allocation. It will thus not be attempted.

■ Counsel for the parties made several suggestions for allocation between the various parties, of the Special Master's fees on the discovery proceeding. The attorneys for the Los Angeles Bank group filed a response to the petition of the Special Master for fees. They concede that, inasmuch as, the Los Angeles Bank group were present at the preliminary discovery proceedings, which consumed about 20 days, that the Los Angeles Bank group should be charged with one-half of the costs of the Master's fees for that 20 days. But they contend as to the remaining 120 odd days of the Special Master's time assignable to the discovery proceedings, they should only be charged for a portion of the days that their counsel were actually present. From the whole record of the case and the evidence before me, as a matter of

fact, the Los Angeles Bank group benefited from all the discovery proceedings whether their counsel were present or absent from the hearings. I have not examined the transcript of those hearings from day to day to determine the appearances or waiver of presence, and the Master was unable to state whether or not there was a definite statement in the record from day to day that they would rely upon counsel who were present, when attorneys for the Los Angeles Bank group were not present. Nevertheless, from the whole record of the proceedings and the whole testimony of the Master, it is my conclusion that, as a matter of fact, the Los Angeles Bank group participated in the discovery proceedings to the extent that they had the benefit of those discovery proceedings throughout their entirety. Hence, the suggestion of the Los Angeles Bank group that an assessment of one-half of the cost of the 20 days when they were actually present at all times, is a just and reasonable standard by which to allocate the fees, on the allowances to the Special Master on the discovery proceedings, between the Los Angeles Bank group and the Long Beach Association.

In considering this matter I have had in mind the suggestion I made to counsel during the course of the hearings on the Special Master's report that possibly any assessment as costs of Special Master's fees and expenses allocated against the Los Angeles Bank group should provide for its collection from each of the shareholders of the Los Angeles Bank, at the time of the filing of the action, in the proportion in which each shareholder held stock in the Los Angeles Bank. Counsel for the Los Angeles Bank, while admitting that that might be a desirable object, have stated, with the candor which has marked counsel for the Los Angeles Bank group throughout these proceedings, that they are unable to find any authority to support an assessment against all of the shareholders of the Los Angeles Bank at the time of its dissolution, as a class. I have found none, and it will not be attempted.

The Los Angeles Bank action, No. 5678, was originally filed by six building and loan associations as plaintiffs, as members of the class, on behalf of themselves and all other shareholders of the Los Angeles Bank. The Wilmington Association was one of the six. During the course of the proceedings Wilmington severed itself from the other plaintiffs in action 5678 and thereafter appeared for itself. Whatever is finally allowed and assessed as costs for the Special Master's Services and expenses will be allocated one-half against the six original plaintiffs jointly and severally in action 5678 and the other half against the Long Beach Association.

Before proceeding to a determination of the amounts to be allowed to the Special Master, consideration must be given to the effect of the decision of the appellate court on the Master's fees appeal, 208 F.2d 197, upon the orders for partial interim allowance of fees to the Special Master which were not appealed from. That is to say, is this court now required to vacate all of the orders allowing any fees and expenses to the Special Master?

That question, in my judgment, is required to be answered in the affirmative, by the opinion of the appellate court. Accordingly orders will be prepared and submitted vacating each order for fees and expenses of the Master.

The total heretofore allowed as fees to the Master is the sum of $64,000; the total heretofore paid to the Master on account of expenses incurred by him, was the sum of $4,932.44 in connection with the turn-back proceedings, and the sum of $6,351.74 in connection with the discovery proceedings.

All of the fees and expenses were paid from funds impounded in court and it was only the order of April 9, 1948, allowing $20,000 as a partial interim allowance of fees to the Master, which ordered that sum paid from funds of the Long Beach Association. That order and the report upon which it was based dealt exclusively with the turn-back proceedings and its involvements.

The master has not asked for any specific amount as fees. Upon inquiry from the court he suggested that it be a minimum of $100,000 and a maximum of $125,000 for his total services in connection with both the turn-back and discovery proceedings.

Before discussing the allowance to the Master on account of fees I wish to indicate that he is entitled to be paid by the Long Beach Association the sum of $4,932.44 expenses incurred by him, as expenses necessarily incurred in the conduct of the turn-back proceeding, and that he is entitled to be paid the sum of $6,351.74 on account of expenses necessarily incurred by him in the conduct of the discovery proceedings. This sum will be assessed as costs and allocated one-half against the Los Angeles Bank group and one-half against the Long Beach Association.

It is unnecessary to repeat here, or attempt to describe the work done by the Special Master. The appropriate place for that detail is in the Findings of Fact. Suffice it to say that the task was a prodigious one; that when the order of turn-back was made in January 1948 all parties agreed that a Master should be appointed, including the Home Loan Bank Board by its counsel, and the United States Attorney appearing in behalf of the official defendants. The order appointing the Special Master recited that it was "upon the Court's own motion," which was commented on by the appellate court in their opinion in 208 F.2d 197, which is not quite accurate. The fact is, as just stated, that all parties agreed that a Master should be appointed. It required the services of someone who could give all of his time. It required the services of someone who was familiar with the banking and building and loan business, and was at the same time a lawyer; and one who had an intimate familiarity with all of the pleadings and proceedings which had theretofore gone on in connection with this litigation; and it also required the services of someone who had sufficient tact and diplomacy to prevent the acrimony and bitterness of the parties from interfering with the orderly process of turn-back. Counsel for the parties were barren of suggestions for such a person. It then occurred to me that Mr. Ronald Walker, who was and had been Assistant United States Attorney charged with this litigation, had all of the qualifications which were necessary and could devote the time, if he could secure a leave of absence from his duties as Assistant U. S. Attorney.[1] So that it was not on the court's motion that a Master was appointed, but, more accurately speaking, it was the court's own motion that Mr. Walker was selected as the Special Master. The suggestion of the court for the appointment of Mr. Walker met with approval of everybody, except Mr. Walker. And it took a bit of persuading by the court and the other parties to induce Mr. Walker to accept the responsibilities.

There had theretofore been three separate turn-overs of the Association, viz., when it was first seized by Ammann; when it was returned to the Association under order of the three-judge court; and, when it was again taken by Ammann under the order of the Supreme Court. In none of them had there been any receipts given or taken, or inventories made or given. The seizure by Ammann precipitated a run on the Association of ten million dollars in a few days. Feelings of all parties and large groups, including the depositors and shareholders, were running high; and it was then my considered conclusion, and was likewise the conclusion of all counsel who expressed the need for the appointment of a Master, that an orderly turn-back, under the supervision of a Master of the Court, was necessary in order to prevent further runs and loss of public confidence which might have well resulted in the complete destruction of the Association. The Master spent his entire time for approximately six months to the

---

1. The duties of the Master were so onerous and prolonged that the leave of absence ripened into separation from the service for Mr. Walker.

exclusion of all other business, and, his duties in connection with the turn-back, and its incidental matters, required him to maintain a residence in Long Beach so that he would be readily available at all times to any and all of the parties in connection with the turn-back. The turn-back was orderly, no disturbances of any kind occurred; complete receipts and inventories were given and taken; micro-films were made of all records so that each party would have copies so as to completely protect themselves and their position in the accounting which was ordered by the Home Loan Bank Board to be made by Ammann to the shareholders. From the date of the order of turn-back, and during the process of turn-back, the wisdom of the parties in agreeing to the appointment of a Master by the court was demonstrated by the constant increase of deposits in the Association all during the process of turn-back. At the time of the seizure by the conservator originally, in 1946, the deposits were $26,000,000. Under the conservatorship they diminished to the point where on the date of the turn-back they were approximately $16,000,000. Since the turn-back they have steadily increased so they are presently in the neighborhood of $50,000,000.

In any assessment of the value of the services of the Master, either in connection with the turn-back proceeding or the accounting, it is my considered judgment that a time basis is not a proper or just method, by itself, of fixing the Master's fees. I have already alluded to the amounts involved in connection with the turn-back and it must be kept in mind that the litigation concerning the reestablishment of the Los Angeles Bank involved an institution whose assets are in the neighborhood of $100,000,000. No one knows quite as well as I, the tax upon the patience of the Master in conducting both the turn-back proceedings and the discovery proceedings wherein he had to deal with many able and ingenious counsel representing a multitude of parties with the atmosphere constantly charged with animosity and suspicion.

This is a factor that cannot be overlooked in allowing fees to the Master in this case. Furthermore, it was necessary for the Master, at all times, to be completely familiar with all of the pleadings and contentions of the parties.

To indicate the volume of paper matter with which the Master familiarized himself, it is sufficient to state that the printed record on appeal in appeal No. 12511, was more than 12,000 printed pages; and that did not include all of the record as there were thousands of exhibits in court with which the Master had to be familiar; and he could not, in justice to the performance of his duties as Master, have failed to be present at any of the multitude of hearings which were constantly occupying the time of this court throughout these whole proceedings, as well as familiarizing himself with the various appeals that were taken, their posture and progress. And in addition to all of that, he has had to defend the allowances to him as a Special Master on appeal, as a party.

Mr. Hubert Morrow, a member of the Bar of the State of California for approximately fifty years, was called as a witness and testified in connection with the petition for allowance of fees to attorneys in this case. His observation was, in effect, that he had never in his experience encountered any piece of litigation as complex, as ramified or as difficult as this.

From the whole record in the case it is my judgment and conclusion that a fair and reasonable allowance to the Master as fees in the turn-back proceeding is the sum of $75,000, which is, and will be, assessed against the Long Beach Association, as costs; and that the sum of $25,000 is a fair and reasonable allowance as compensation to the Master for services in, and in connection with, the discovery proceedings which will be allocated and charged one-half to the Long Beach Association as costs and one-half to the Los Angeles Bank group as costs; the sum of $4,932.44 is allowed as expenses to the Master in connection with the turn-back proceeding and as-

sessed against Long Beach Association as costs; the sum of $6,351.74 is allowed to the Special Master as expenses in, and in connection with the discovery proceedings and will be allocated and charged as costs one-half against the Long Beach Association and one-half against the Los Angeles Bank group.

The whole basis of the various appeals from the orders allowing fees to the Special Master was that such orders were an invasion of the moneys on deposit in court upon which the San Francisco Bank claimed a lien. None of the parties had an audit made prior to the decision of the Court of Appeals on the Master's fees. None was made until by order of this court in connection with the hearings on the spreading of the mandate in 5421–5678, an audit was required, which developed that there was on deposit, in this court, funds belonging to Long Beach Association, in cash, approximately one-half million dollars in excess of any amounts required to be held to be subject of the lien of the San Francisco Bank under the conservator's notes. (The exact amount as of August 3, 1953 was the sum of $481,060.26). This money was conceded by all to be the property of the Long Beach Association except as to the sum of approximately $180,000, see 117 F.Supp. 259, pages 288, 289 for break-down of audit. The findings to be prepared hereon will so find as a fact.

Either prior to the time of the making of this order or co-incident with it, an order will be made which will sever from the money on deposit in court all of the bonds and money upon which the San Francisco Bank has a claim of lien which it is attempting to foreclose in action 13979.

Thus it will be unnecessary to require execution to be issued on behalf of the Master against Long Beach Association for the amounts he has already received, but it will be provided in the order that the amounts heretofore received by the Special Master shall be set off against the allowances herein made and that the portions assessed against Long Beach

Association as heretofore provided will be paid from the balance of the funds remaining in court, belonging to Long Beach Association, and the Master may have, upon application, a writ of execution under Rule 53(a) against the Los Angeles Bank group for the fees and expenses herein provided to be assessed against, and to be paid by, the Los Angeles Bank group, and the Order will provide for interest on such amounts unpaid at the rate of six per cent until date of payment.

The Master will prepare Findings of Fact, Conclusions of Law and Judgments and Orders in accordance with this memorandum and submit them to the parties under the rules.